CASES IN CHANCERY, 1919.

OLE N. OLESON et al., executors,

*v.*

STEPHEN F. SOMOGYI et al.

[Decided August 14th, 1919.]

Where a testatrix gives her property to trustees to pay the income therefrom to her son for life, and, if necessary, to use part of the *corpus* for his benefit, he being her sole heir-at-law and 'next of kin, and directs that after the death of her son the estate shall be distributed among her legal heirs and next of kin, the estate goes to the nephew and nieces of testatrix, on the son's death, to the exclusion of the son's widow.

On bill, &c.

*Mr. Charles C. Hommann,* for the complainants.

*Mr. Irving Lipman, Mr. John P. Kirkpatrick, Mr, John W. ·Beckman* and *Mr. Edmund Wilson,* for the defendants.

*Mr. Stephen F. Somogyi, pro se.*

STEVENS, V. C.

This is a bill for the construction of the will of Margaret E. Evans. The will bears date in December, 1913, and the codicil in February, 1916. Testatrix died in March, 1917, at the age of seventy-one. She left a son, who was, at the date of the will and at her death, her sole heir-at-law and next of kin. Her estate consisted of a house and of personal property worth about $28,000.

After payment of her debts and funeral expenses, testatrix gave the residue of her estate to Ole N. Oleson and the· Perth Amboy Trust Company in trust to keep the same rented and invested and from out of the income to pay the expenses of the education of a grandniece, and to pay the remainder of the in-

come to her son, Garrett Van, as long as he lived; and if he, at any time, through illness or personal injury, should be in such circumstances that the income would be insufficient for his financial needs, the trustees were to use for his benefit such part of the *corpus* of the estate as they in their discretion might deem necessary.

The third section of the will, which has given rise to the present controversy, reads as follows:

"At and after the death of my said son. I direct my said executors to distribute my estate among my legal heirs and next of kin who shall be at law entitled to the same, as though I died intestate."

The son died after his mother, leaving a widow. The widow's contention is that the *corpus* of the estate, at testatrix's death, vested in the son and that she is entitled to the personalty as his next of kin under the statute.

The issue of a brother of testatrix contend that they are the legal heirs and next of kin intended by her.

The law applicable to the situation is thus stated in *2 Wms. Ex. (7th ed.) 989:*

"If there is nothing in the context of the will or the circumstances of the case to control the natural meaning of the testator's words, his next of kin living at his death will be entitled, and if the tenant for life happen to be one of such next of kin or *to be the only such next of kin,* he is not on that account to be excluded. But where the context demonstrates that the person or persons to take under the description of next of kin, is a person or persons to be ascertained at a future period or that it is the testator's intention to exclude the tenant for life from the description of next of kin, the expression must be necessarily understood as meaning the testator's next of kin living at the death of the tenant for life."

Vice-Chancellor Emery, in *Tuttle* v. *Woolworth, 62 N. J. Eq. 532,* says: "In a legal sense, 'heirs' implies a reference to the time of the ancestor's death, and if a testator makes a devise or gift to his heirs or next of kin, those standing in that relation at the time of his death would seem to be the persons intended, unless there is something in the will itself to show that the testator had another period in his mind and that the legal sense of the word is to be restricted by indications that some other time

is fixed. If the gift to testator's heirs or next of kin follows a previous gift to a person, not one of the heirs or next of kin of the testator, there could generally be no question that the class was fixed at testator's death."

The English cases in which this question has been considered are numerous and their general result is stated in the above passage from Williams. The inquiry has always been whether the context or the circumstances show that some persons other than the heirs or next of kin, who were such at testator's death, are the persons intended.

As Vice-Chancellor Emery remarked there could ordinarily be no question when the gift to the heirs or next of kin followed a gift to a person other than the heirs or next of kin. The difficulty has arisen where there has been a gift to A or to A, B and C, expressly for life (they being the heirs or some of the heirs and next of kin) followed by a gift to testator's heirs and next of kin on his or their death with or without other contingency. And even among cases of this kind there is a distinction. If the testator has several heirs or next of kin, A, B and C, and, as in *Tuttle* v. *Woolworth,* gives property to A for life, and at A's death to his (testator's) heirs and next of kin, there is less difficulty in saying that the *corpus* shall be distributed among A, B and C (A being, under the description, as much entitled as B and C), than there is in saying that where the testator has only one child and gives the income to that child for life, and at his death to his (testator's) heirs-at-law and next of kin, that that child is the person intended to take the *corpus*. In this latter case I think the ordinary testator would certainly conceive that by the terms of his bequest he had given the *corpus* to persons other than the child. *Delany* v. *McCormack,* *88 N. Y. 174, 183.* If he had wished, in fact, to give it to the child he would have done it in a less roundabout way. He would hardly have said, in effect, I give the income of my estate to my son for life, and if he die, then I give my estate to my son. But even in this case it has been decided that such is the inherent force of the expressions "heirs-at-law" and "next of kin," viz., those who are such immediately at the death—that what might be called the natural presumption is overcome by

the legal presumption which arises from the use of the technical words. It is, however, obvious that testator's real intention being what is sought after, slighter indications would in the case of a gift to a single heir suffice to take the case out of the general rule than would be required in the case of a gift for life to one of several heirs followed by a gift of the *corpus* to the heirs generally.

One of the early cases is *Jones* v. *Colback, 8 Ves. 38.* The residuary bequest was to testator's daughter for life and to her children at their ages of twenty-one; and after the decease of the daughter and of her children under that age, the estate was to go to and be distributed among his relations in a due course of administration. The court construed "relations" to mean next of kin; and the daughter dying without leaving issue it was held that the property went to the great nephews and nieces rather than to the personal representatives of the daughter who was testator's sole next of kin at his death. Sir William Grant, M. R., said: "I think in the present case it is evident the testator intended to speak of 'relations,' not at the time of his own death, but at that of his daughter or her issue under the age of twenty-one. As to the claim of the daughter, it is hardly possible the testator could mean to describe an only daughter by the term 'my relations,' directing also that *the residue be distributed among* those relations. Next, it is impossible that he could take this strange circuitous method of giving her the whole residue in the event of her dying without children, instead of directly saying so." I quote this case as being not only very much in point, but because, in spite of some intermediate criticisms, it was thought to be correctly decided by the lord-justices in *Lees* v. *Massey, 3 De G. F. & J. 113.*

In *Briden* v. *Hewlitt, 2 Myl. & K. 90,* the gift was to testator's mother for life, and in case she died without will, "then to such person or persons as would be entitled to the same by virtue of the statute of distribution," and it was held that the word "would" imported that testator intended his next of kin at his mother's death and not at his own death. In *Butler* v. *Bushnell, 3 Myl. & K. 232,* it was said that the words "such persons as happen to be" or "such persons as shall or should be" my next

of kin indicate an intention to confine the gift to such persons as should answer the description at the death of the tenant for life. In *Minter* v. *Wraith, 13 Sim. 52,* the gift was to testator's two daughters for life with a gift over to his next of kin, *his,* her or their heirs, &c. The word "his" was held to be not applicable to daughters. In *Say* v. *Creed, 5 Hare 580,* Vice-Chancellor Wigram said in the course of his judgment: "When, therefore, testatrix in such circumstances described her next of kin to whom she had given her property in terms which import that she contemplated a *plurality* of persons under that description, the question is whether her words of plurality interpreted, do not describe some persons other than" (her sole next of kin to whom she had given the property for life).

I have specially referred to these cases among many others because they seem to me to bear directly upon the case in hand. There are several indications of testatrix's intention to give the *corpus* of the estate, not to her son, but to those who should be her next of kin at his death. In the first place, she gives her trustees power to use the *corpus* for his benefit. This would have been unnecessary if she had intended to give him the *corpus* outright. Second, she used the word "shall," adverted to by the master of the rolls in *Butler* v. *Bushnell, supra,* as indicating an intention to give to the persons who answer the description at the death of the tenant for life rather than at her own death; for the will speaks from the death. Third, she directs her executors to *distribute* her estate *among* her legal heirs and next of kin—that is, among a *plurality* of persons. These indications seem to me, in accordance with the cases cited, to be sufficient to take the case out of the general rule.

The strongest case that I have found on the other side is, perhaps, *Bird* v. *Luckie, 8 Hare 301.* There the direction was, upon the grandson's death to *distribute* the whole of the residue *among* such next of kin, &c. This was a distribution apparently among a plurality of persons. Vice-Chancellor Knight-Bruce said: "I do not see why it should be supposed that when testator made his will he contemplated, as impossible to happen in his lifetime, any

event which was then possible to happen in his lifetime, though in fact it did not." In other words, it was possible for him to have had other next of kin of the same degree at his death, and to have so contemplated. In the case in hand such an impossibility exists. Mrs. Evans, at the age of sixty-eight, was past child bearing, and if her son survived her she could have but *one* next of kin, and she could not have contemplated having any other of like degree. It is said, in this class of cases, to be the duty of the court to put upon words their proper meaning and to give effect, if possible, to every word. It cannot, in the present case, be held that a sole next of kin was intended without doing violence to language which imports more than one. There is to be a distribution *among* next of kin—a thing impossible if only *one* take; and when such a construction furthers what seems to be, on the face of things, testator's real intention as contradistinguished from that somewhat artificial intention deducted from the use of the technical words, why should the court hesitate? I think the nephews and nieces take to the exclusion of the son's widow.