The will of Oscar Keen, deceased, dated January 7th, 1907, is presented for construction. The pertinent provisions are found in the third item, which reads as follows:
"I give, devise and bequeath unto my said Executors and Trustees, and to the survivor of them, all of my property, real, personal and mixed (except such as is hereinafter mentioned) in trust, however, for the following uses and purposes, that is to say:
"a. They are during the life time of my wife Elizabeth D. Keen to divide the net income of my estate unto three equal parts, and pay one-third thereof to my said wife so long as she shall live; one-third thereof to my son Benjamin Williamson Keen and one-third thereof to my daughter Mary Hampton Stockton.
"b. On the death of my said wife they are to pay over and transfer to my said son Benjamin one-sixth of the principal of my estate, and thereafter during the joint lives of my children they are to pay to my said son Benjamin two-fifths of the income of the remaining principal of my estate and to my daughter Mary three-fifths of said income.
"c. On the death, before my said daughter and after my said wife, of my said son Benjamin leaving lawful issue, or lawful issue born to him after his death, they are to pay over and transfer two-fifths of the then principal of my estate to such lawful issue in equal shares; but if he should so die before my said daughter and after my said wife leaving no lawful issue as aforesaid, they are to pay the entire net income of my estate to my said daughter Mary so long as she shall live, and after her death they are to pay over and convey the entire principal of my estate to my heirs-at-law and next of kin.
"d. On the death of my said daughter before my said son and after the death of my said wife, they are to pay over and transfer to my said son Benjamin three-fifths of the then principal of my estate; but if at the death of my said daughter he should be already deceased leaving lawful issue or lawful issue born to him after his death, they are to pay over and transfer the remaining three-fifths of the principal of my estate to such lawful issue in equal shares; or if at the death of my said daughter he shall be so deceased, leaving no lawful issue as aforesaid, they are to pay over and transfer the then entire principal of my estate to my heirs-at-law and next of kin."
Here follow similar provisions, in the event either child should predecease Mrs. Keen. Then this paragraph:
"The income hereinbefore directed to be paid by my said Executors and Trustees to my said son and daughter is intended for their proper maintenance and support, and is to be paid to them in such sums and at such times as said Executors and Trustees may think proper, or they may, for good and sufficient reasons, withhold the whole or *Page 265 
any part of said income. Neither of my said children shall assign or pledge said income or any part thereof, nor are my said executors and trustees to recognize any assignment or other disposition thereof by either of my children."
Testator died in 1913, survived by his widow, Elizabeth D. Keen, and two children, Benjamin W. Keen and Mary Keen Stockton. His nearest of kin, excluding his widow and children, was his nephew, George A.K. Sutton. Benjamin, about thirty-four years old, was unmarried. Mrs. Stockton was childless and as a result of a severe illness, was incapable of bearing children. This fact was known to her father when he made his will.
Mrs. Keen died in 1928, leaving a will by which she gave her entire estate to her sister, Mary T.C. Huston. Benjamin, still unmarried, died August 17th, 1935, leaving a will under which the residuary legatee is All Souls' Hospital of Morristown. So the last clauses of paragraph "c" and "d" of the will become effective.
Mrs. Stockton, All Souls' Hospital and the state tax commissioner contend that on testator's death, his son and daughter each took a vested remainder in one-half of five-sixths of the estate, subject to divestment if Benjamin should die leaving issue. As Benjamin died without leaving issue, the event on which defeasance depended cannot happen. The other one-sixth part of the estate is that which was payable to Benjamin and was paid to him upon the death of Mrs. Keen.
Mrs. Huston takes the same position except that she says that Mrs. Keen should be included as one of the next of kin under the statute and as a remainderman.
Mr. Sutton claims the whole estate, subject to the life tenancy of Mrs. Stockton. He argues that the next of kin and heirs-at-law should be determined by excluding the widow and children of testator.
Although the remainder was primarily given to the issue of Benjamin, the gift over vested immediately on testator's death, defeasible upon demise of the life tenant leaving issue, for the contingency was not in the person, but in the event. Miers v.Parsons, 92 N.J. Eq. 17; Durand v. Ward, 105 *Page 266 N.J. Eq. 274. Where remainders are created by directions to pay and transfer, but the time of payment is postponed only for the purpose of letting in the prior estates, the remainder vests when the will takes effect. Redmond v. Gummere, 94 N.J. Eq. 216. A class of remaindermen described in a will as testator's heirs or next of kin, is to be ascertained as at the death of testator.Guild v. Mayor, c., of Newark, 87 N.J. Eq. 38; In re Buzby,94 N.J. Eq. 151. Such are the general rules applicable.
The difficulty arises because the life tenants also constituted the class to whom the remainder was given. A similar situation was considered carefully by Vice-Chancellor Emery in Tuttle v.Woolworth, 62 N.J. Eq. 533. "The objection from incongruity supposed to arise against holding that the previous tenant is entitled to any interest in an estate as next of kin, after the estate specially given to him by the will has terminated, is, as it seems to me, met and answered by the consideration that when the testator limits an estate to one of his next of kin and his children or issue, and then directs that, on failure of this limitation, his heirs or next of kin shall take according to law, he discloses clearly that, if the special and immediate limitation fail, as it may, then he had no intentions or wishes to change the disposition which the law itself would have made for him in regard to this part of his estate, and that, on the failure of his special purpose, he desires that he should be considered as making no provisions of his own about the disposition of his estate, but as expressly leaving that disposition to be made by the laws as if he had died intestate." He held that the remainder had vested at testator's death in his three children including the life tenant and that the fund was distributable among them or their personal representatives.
In Oleson v. Somogyi, 90 N.J. Eq. 342; affirmed, 93 N.J. Eq. 506,
Vice-Chancellor Stevens construed a will bequeathing a life estate to testatrix' son, her only next of kin, and directing her executors at his death "to distribute my estate among my legal heirs and next of kin who shall be at law entitled to the same as though I died intestate." The vice-chancellor *Page 267 
recognized the general rule as stated in 2 Williams Executors
(7th ed.) 989. "If there is nothing in the context of the will or the circumstances of the case to control the natural meaning of the testator's words, his next of kin living at his death will be entitled, and if the tenant for life happens to be one of such next of kin or to be the only such next of kin, he is not on that account to be excluded." He suggested that there is less difficulty in following the rule when the tenant for life is one of several next of kin, than when he is the only next of kin. He then found in the will indications of the testator's intention, sufficient to take the case out of the general rule. "In the first place, she gives her trustees power to use thecorpus for his [the son's] benefit. This would have been unnecessary if she had intended to give him the corpus
outright. Second, she used the word `shall,' adverted to by the master of the rolls in Butler v. Bushnell, 3 Myl. K. 232, as indicating an intention to give to the persons who answer the description at the death of the tenant for life, rather than at her own death; for the will speaks from the death. Third, she directs her executors to distribute her estate among her legal heirs and next of kin — that is, among a plurality of persons." And so he decided that nieces and nephews took the remainder to the exclusion of the son's representative.
Miers v. Parsons, supra, deals with the will of the late Mr. Justice Alfred Reed, who bequeathed income to his only child, for life and, on her death without issue, the principal sum "to my next of kin surviving." Chancellor Walker, without discussion, held that the remainder vested at testator's death in those persons who would have been his next of kin if he had left no descendants.
The next case is American Builders Corp. v. Galligan,93 N.J. Eq. 51. A will gave to testator's five brothers and sisters a joint life estate, remainder to "such persons as would by law inherit the same." Testator's only heirs were the life tenants and the children of a deceased brother. Vice-Chancellor Backes held that the remainder was contingent until the death of the last surviving tenant, when it vested in those *Page 268 
who would have been testator's heirs-at-law had he lived till then. "That is the natural deduction. He could not have reasonably meant that those for whom he had expressly provided for life were to be the remaindermen as well. If he had meant that, he would have given them the estate outright in the first instance." The court of errors and appeals in an opinion by Chief-Justice Gummere, took the opposite view. 94 N.J. Eq. 731.
"It is admitted that there is nothing outside of the residuary clause itself indicative of a purpose to create a contingent rather than a vested estate in remainder. This being so, does the fact that the life tenants are among the heirs-at-law of the testator indicate such a purpose — that is, that those of them who were nearest to him in blood should only take a life interest in his property, and that after the death of the last survivor of them this property should go to those who at that time should be the testator's heirs-at-law; in other words, to those of the children of the several life tenants who should be then living, and to those of the children of his deceased brother, Augustus, who should be living at that time? To us such an intention seems an unnatural one, and it is not apparent from the language used. Nor, as we think, can it reasonably be inferred from the words of the devise."
The latest decision in this series is Genung v. Best,100 N.J. Eq. 250. The testatrix left real and personal property to her husband for life and directed that on his death "the whole of my said estate both real and personal shall go to and be divided in equal shares between and among my legal personal heirs and representatives." The husband conceded that he had merely a life estate in the land but claimed the entire interest in the personalty on the theory that the words "my legal personal heirs and representatives" meant the next of kin designated in the statute of distributions. Vice-Chancellor Berry emphasized that distribution was to be made "upon" the husband's death, "among" the heirs and representatives, and also that the coupling of real estate and personalty in the same clause indicated an intention that the beneficiaries should take the same estate in the one as in the *Page 269 
other. He concluded that the husband took a life estate only and not the remainder.
Cases from other states are collected in notes in13 A.L.R. 615; 20 Id. 356; 30 Id. 915, and 61 Id. 1011.
I deduce from our authorities that the rule stated in Tuttle
v. Woolworth is still the law of New Jersey, but that when the life tenants are the sole next of kin or heirs of testator, they will be excluded from the gift in remainder if indications that such was testator's intention are found in the will, even though the indications are not clear.
The will of Oscar Keen contains not one of the indications of testator's intention which in Oleson v. Somogyi and Genung
v. Best, supra, took the wills there construed out of the general rule. Nor have counsel for Mr. Sutton discovered other evidence of intention which should have that effect. They call attention to the expression "then principal of my estate," recurring in the will and argue that the word "then" is used as an adverb of time and postpones ascertainment of the class of beneficiaries until the period to which it refers. But as I read the will, the "then principal" is the balance remaining after payment of one-sixth to Benjamin. It has not the significance which counsel attribute to it. The corpus in question vested at Mr. Keen's death, in his heirs-at-law and next of kin," not excluding the life tenants. I reach my conclusion with the greater confidence because Mr. Keen was an able lawyer. Tuttle
v. Woolworth was decided six years before the date of his will and settled the title to real estate located close to his home. It is most likely that he was familiar with this case. On the other hand, Oleson v. Somogyi and following decisions which distinguish Tuttle v. Woolworth came after his death.
Was Mrs. Keen included among the remaindermen? The limitation to heirs and next of kin means that Mr. Keen, upon failure of his special purpose to leave his estate to Benjamin's issue, desired, as stated in Tuttle v. Woolworth, supra, "that he should be considered as making no provisions of his own about the disposition of his estate but as expressly leaving that disposition to be made by the laws as if he had *Page 270 
died intestate." The estate is all personalty. Mr. Justice Dixon for the court of errors and appeals in Leavitt v. Dunn,56 N.J. Law 309, said of the word heirs, "when employed in the disposition of personal property, it has been generally deemed to indicate the persons appointed by the statute to succeed to such property. (Citing cases.) In the opinions delivered in these cases, the phrase `next of kin' is frequently used by the judges as their synonym for the word `heirs' in the disposition of personal property, but what they mean by the phrase is not merely the nearest kinsmen, but the distributees under the statute, including both the widow and those who, by the statute, may represent deceased kinsmen." To the same effect are Throp v.Throp, 69 N.J. Eq. 530, and Meeker v. Forbes, 84 N.J. Eq. 271.
In Apgar v. Hoffman, 113 N.J. Eq. 233; affirmed,115 N.J. Eq. 171, Vice-Chancellor Buchanan determined that a testamentary gift of personalty to "next of kin" in the absence of any indication of a different meaning, should be interpreted as meaning "those who take under the statute of distribution" rather than the stricter meaning of "nearest blood relations." A different interpretation cannot be given to the combination "my heirs-at-law and next of kin." Mrs. Keen, as widow, took a third part of the estate.
Mrs. Stockton points out that she is the life beneficiary of the entire estate, as well as the remainderman of one-third thereof. She prays that the trustees be directed to turn over this third of the corpus to her. Where an estate is given to trustees to collect and pay over the income to a life tenant and on his death to deliver the corpus to remaindermen, the trust is usually a mere device for preserving the estate, during the life tenancy, for the benefit of the remaindermen. In such case, if the life interest and the remainder become vested indefeasibly in the same person, the trust will be terminated and the beneficial owner will be given possession of the estate. Brooks
v. Davis, 82 N.J. Eq. 118; Supreme Lodge, Knights of Pythias,
v. Rutzler, 87 N.J. Eq. 342; Camden Safe Deposit, c., Co. v.Guerin, 89 N.J. Eq. 556; Schmeider v. Meyer, 96 N.J. Eq. 69;L'Hommedieu v. L'Hommedieu, *Page 271 98 N.J. Eq. 554; Pedrajas v. Bloomfield Trust Co., 101 N.J. Eq. 105; affirmed, Id. 603. But not so if the termination would defeat a material purpose of the testator. Cooper v. Cooper,36 N.J. Eq. 121; Randolph v. Randolph, 40 N.J. Eq. 73;Endicott v. Endicott, 41 N.J. Eq. 93; Rosenblum v. Garrett,57 N.J. Eq. 186. In the Cooper Case, the will which created the trust, directed that the share in question should be retained in the hands of trustees and the income thereof appropriated to the cestui's support and maintenance at the trustees' discretion. Chancellor Runyon decided that the beneficiary was not entitled to have the corpus since the trust involved confidence, discretion and active duties. In Huber v.Donoghue, 49 N.J. Eq. 125, Vice-Chancellor Bird reached a different conclusion, although the will was somewhat similar. It directed trustees to apply rents "so far as necessary to the maintenance of my wife and unmarried children" for ten years and then to sell and divide the proceeds. On the prayer of all parties in interest before the expiration of the ten-year period, a sale and division were ordered. But the vice-chancellor seems to have considered that no discretion was given to the trustees, and he cited with approval Sears v. Choate, 146 Mass. 395;15 N.E. Rep. 786, holding, "where the plaintiff has the entire beneficial interest both in the income of property held by trustees for his benefit and in the property itself, and there is no limitation over the estate in any contingency to any other person, no discretion given to the trustees and no provision that the income or estate be inalienable by the plaintiff or attachable by his creditors, he is entitled to a decree terminating the trust."
The last paragraph of Mr. Keen's will quoted above states that the income directed to be paid to his son and daughter "is intended for their proper maintenance and support and is to be paid to them in such sums and at such times as said executors and trustees may think proper, or they may, for good and sufficient reasons, withhold the whole or any part of said income. Neither of my said children shall assign or pledge said income or any part thereof." Clearly discretion is given to the trustees. The testator intended not only to *Page 272 
preserve the corpus of the estate for the remaindermen but also that his daughter — as well as his son — should be assured of an income for her support as long as she might live. The safeguards which he devised for her would be destroyed by granting her prayer. The trustees must retain the corpus for the purposes set forth in the will.
Let there be a decree in accordance with these views.