This matter comes before the court for the purpose of a construction of the will of Coleman F. Leaming, who died in May of 1900, leaving him surviving a widow and one daughter. He also left a large number of persons or their representatives who could be called his heirs-at-law. The widow predeceased the daughter, who succeeded to her mother's interest under the Leaming will, and the daughter died without issue in June of 1937, first having executed a last will and testament. At the time of the daughter's death there were also a large number of persons who could be called heirs-at-law of Leaming.
Decedent's will provided for the conversion of his real estate into cash, which was done. He directed his executors to pay certain sums of money to his widow and daughter at stated intervals after his death, so that the final cash payment should be made within one year after his death, and provided that if the daughter died "before receiving any or all of such payments" the unpaid installments be paid to his widow, and in case of the death of the widow under like circumstances, the unpaid installments were directed to be paid to the daughter.
Testator ordered his trustees to pay the income of two-thirds of his estate to his daughter for life, "for her own use," in quarterly installments, and on her death, leaving issue, said income was directed to be used for the maintenance and education of such issue until the youngest thereof reached the age of twenty-one years, upon which event the corpus was to be paid to such issue. In the event of the death of the daughter without issue and during the lifetime and widowhood of his widow, the income to the widow for life and *Page 172 
on the widow's death or re-marriage subsequent to the death of the daughter without issue, the corpus to "my heirs-at-law for their own use."
Testator made similar provisions as to the income of one-third of his estate to his widow for life or widowhood, with provisions that the ultimate payment of the corpus after the death of the daughter without issue and that of the widow, to "my heirs-at-law for their own use."
Another limitation on the right of the widow to receive the income so as aforesaid provided will be hereinafter noted, but it may be well at this time to note that in providing for the payment of the quarterly installments of income to both the daughter and widow the will provided "not any portion of the principal of my estate" should be used.
The following sets forth only such provisions of the Leaming will as are necessary for a more definite understanding of its exact contents than the foregoing recital:
"Tenth: After the expiration of one year after my death, when my real estate will probably have been sold and the proceeds thereof invested, and my said executors and trustees enabled to ascertain with some degree of accuracy the probable net income of my estate, I order and direct them to pay two-thirds of said net yearly income in equal quarterly payments to my daughter Josephine Leaming, for her own use; the first of said payments to be made fifteen months after my death, and the said payments to be continued quarterly thereafter to her, for her own use, so long as she shall live, but not any portion of the principal of my estate. In the event of my said daughter dying, leaving issue, then I order and direct the said two-thirds of said net yearly income to be expended by my said executors and trustees, in their discretion, for the education, maintenance and support of such issue until the youngest thereof arrives at full age, at which time I order and direct my said executors and trustees to pay over to such issue and their legal representatives, perstirpes, for their use, that portion of the corpus of my estate from which said two-thirds of said net yearly income was derived. In the event of my said daughter dying without issue and during the widowhood of my said wife, then I order and direct the said two-thirds parts of said net yearly income to be paid to my said wife, for her own use, in equal quarterly payments during her widowhood, and at her death or re-marriage I order and direct that the portion of the corpus of my estate from which said two-thirds of said net yearly income was derived be paid to my heirs-at-law for their use. In the event of my said daughter dying without issue and subsequent to the death or re-marriage of my said wife, then I order and direct that the portion *Page 173 
of the corpus of my estate from which said two-thirds of said net yearly income was derived be paid to my heirs-at-law for their own use."
"Eleventh: I order and direct my said executors and trustees to pay the remaining one-third of the said net yearly income of my estate, in equal quarterly payments, to my wife Hannah H. Leaming, for her own use; the first of said payments to be made fifteen months after my death, and the said payments to be continued quarterly thereafter to her, for her own use, so long as she shall remain my widow, but not any portion of the principal of my estate. In the event of my said wife either dying or re-marrying in the lifetime of my said daughter Josephine, then I order and direct the said one-third of the said net yearly income to be paid to my said daughter Josephine for her own use in equal quarterly payments during her natural life, and at her death leaving issue, then I order and direct the said one-third of said net yearly income to be expended by my said executors and trustees, in their discretion, for the education, maintenance and support of such issue until the youngest thereof arrives at full age, at which time I order and direct my said executors and trustees to pay over to such issue and their legal representatives, per stirpes, for their own use, that portion of the corpus of my estate from which said one-third of said net yearly income was derived; and at my said daughter's death without issue I order and direct the said last mentioned portion of the corpus of my estate to be paid to my heirs-at-law for their own use. In the event of my said wife either dying or re-marrying subsequent to the death of my said daughter and my said daughter leaving issue, then I order and direct the said one-third of said net yearly income to be expended by said executors and trustees, in their discretion for the education, maintenance and support of such issue until the youngest thereof arrives at full age, at which time I order and direct my said executors and trustees to pay over to such issue and their legal representatives, per stirpes, for their own use, that portion of the corpus of my estate from which said one-third of said net yearly income was derived. In the event of my said wife either dying or re-marrying subsequent to the death of my said daughter and my said daughter leaving no issue, then I order and direct that portion of the corpus of my estate from which said one-third of said net yearly income was derived to be paid to my heirs-at-law for their own use."
"Thirteenth: The provisions made in this my will for my said wife Hannah H. Leaming are intended to be and are to be accepted by her in lieu and bar of any and all dower, right and action of dower and any and all other rights and claims which she may have or make against or in my estate, and my said executors and trustees shall make no payment to her until she shall have in writing expressed her consent to so accept the same and shall have executed a full and complete release of such dower, rights and claims, and in the event of her refusing such consent or refusing to execute such release then I order and direct that the payments authorized by this will to be made to her shall be made to my said daughter Josephine Leaming *Page 174 
her issue and my heirs-at-law in like manner as nearly as may be to the same uses, intents and purposes as is set forth concerning certain portions of my estate in the paragraphs of this will marked `Fifth' and `Tenth.'"
It might be well to add a copy of those portions of the daughter's will which are also pertinent. They are as follows:
"Sixth: If it shall be determined at and after my death that I have any interest in the estate of my late father, Coleman F. Leaming, other than my interest as a life tenant, I direct that the same shall be disposed of in the following manner, that is to say:
"(a) I give and bequeath the sum of Four Thousand Dollars ($4,000.00) to S. Elizabeth Xander, who is now employed by me,provided, however, she shall remain in my employ until my death.
"(b) I direct that the balance thereof remaining after the payment of the aforesaid legacy, shall be added to my residuary estate of which it shall become and remain a part, during the lifetime of the life tenant, Isabella L. Forman, and at and after her death, the same shall be set aside in a separate fund which shall be held and retained by my said Trustee and invested, reinvested and kept invested and the income therefrom after the deduction of all taxes, expenses and commissions, shall be paid to Josephine L.W. Nixon, for and during the term of her natural life and at and after her death the same, together with all accumulations thereon, if any, shall be paid over, transferred and delivered to such of her issue, per stirpes, who shall survive her, absolutely and in fee, freed and discharged of the trust hereinbefore created."
It is quite evident that the daughter, at least, did not understand who were meant by her father when he provided for the ultimate remainder of his estate to go to "my heirs-at-law," so that by the daughter's will she provided, "If it shall be determined at and after my death that I have any interest in the estate of my late father, Coleman F. Leaming, other than my interest as a life tenant, I direct that the same shall be disposed of in the following manner."
The doubt of the daughter, as above expressed, is shared in by complainant and others interested in the Leaming estate, with the result that four questions are propounded for the consideration of the court.
(1) Is the term "heirs-at-law" used by decedent in his will to be construed as "next of kin?"
There can be no doubt that testator, having ordered his estate to be converted into personalty, the above question must *Page 175 
be answered in the affirmative, i.e., that the term "heirs-at-law" used in decedent's will be considered as next of kin. Welsh v. Crater, 32 N.J. Eq. 177, 179; affirmed, 33 N.J. Eq. 362; Meeker v. Forbes, 84 N.J. Eq. 271, 274;93 Atl. Rep. 887; affirmed, 86 N.J. Eq. 255; 98 Atl. Rep. 1086.
(2) Are the life tenants of testator's residuary estate, who were his widow and his daughter, to be excluded in the determination of such next of kin?
The answer to this question depends upon the context of decedent's will, together with the circumstances of this particular case. What was testator's intent, as gathered from a fair reading of the entire will? Is there anything demonstrative of an intent on his part to limit the estate of his widow and daughter to life estates and to exclude them as "heirs-at-law?" My conclusion is that testator intended to exclude his wife and daughter.
At this point it may be well to advert to the rule of law applicable in part to the question now under consideration, as well as to the succeeding question.
The most frequently quoted law applicable to a discussion of this question is that set forth in 2 Wms. Ex. (7th ed.)989:
"If there is nothing in the context of the will or the circumstances of the case to control the natural meaning of the testator's words, his next of kin living at his death will be entitled, and if the tenant for life happen to be one of such next of kin or to be the only such next of kin, he is not on that account to be excluded. But where the context demonstrates that the person or persons to take under the description of next of kin, is a person or persons to be ascertained at a future period or that it is the testator's intention to exclude thetenant for life from the description of next of kin, theexpression must be necessarily understood as meaning thetestator's next of kin living at the death of the tenant forlife."
Of course, the estate having been converted into personalty, both the widow and daughter, through their representatives, would come under the category of "heirs-at-law." A perusal of the will shows that it was carefully drawn by one skilled in such an undertaking and that contingencies which might arise after the death of testator, affecting the estates created *Page 176 
for his widow and daugher, were carefully considered and provided for. Clearly, testator's predominating thought was to care for the daughter and her issue, if any, and his widow during her widowhood, providing she complied with the conditions upon which her life estate depended, but while testator wanted his widow and daughter to enjoy the income of the estate, he explicitly and emphatically directed his trustees that neither the widow or daughter should enjoy "any portion of the principal of my estate." The natural inquiry is as it was in Oleson v.Somogyi, hereinafter discussed. Why did testator create a life estate for his widow and daughter and deny them the use of thecorpus if he intended that they, through their representatives, should ultimately get it anyway?
The question is, what was testator's intent, as gathered from the language used by him in his will as to whether or not the life tenants were to be included or excluded when he left the remainder of his estate to "my heirs-at-law for their own use?" Unquestionably, testator had a right to create life estates for his widow and daughter, with the remainder over to their exclusion. Did he do so?
In the ninth clause of the will testator vests his executors with the assets of his estate, in trust, "to invest and reinvest the same * * * but always preserving the trust * * * to pay over * * * the net income thence arising as ordered and directed." He herein, at the outset, shows a desire to preserve the corpus of his estate for the remaindermen.
In the tenth clause testator provides for the life estate of his daughter and directs that the income of two-thirds of thecorpus be paid to her, "but not any portion of the principal of my estate."
In the eleventh clause he creates a life estate for the benefit of his widow and in like manner, after providing for the payment of income to her, says, "but not any portion of the principal of my estate."
A reading of the will seems to clearly indicate that testator did not intend to include his widow and daughter in the description of "my heirs-at-law." *Page 177 
In the first place, testator limited the life estate to income and expressly denied to them "any portion of the principal of my estate" during the life tenancy. The life tenants were his sole next of kin. Why deprive them of the use of that which he intended their representatives to have? Does it not, from this denial of the use of the corpus or any part thereof demonstrate that the corpus was to be preserved for other than the life tenants, i.e., next of kin of the testator of the collateral and not the direct branch?
In the thirteenth clause of the will testator provides that the provisions made in his will for his wife are intended to be and are to be "accepted by her in lieu of any and all dower, right and action of dower and any and all other rights and claims which she may have or make against or in my estate." He then goes on and provides that no payment shall be made to her until she shall have executed a written consent "to so accept the same and shall have executed a full and complete release of such dower, rights and claims," and should she so refuse, the payments authorized to be made to her were to be made to the daughter Josephine under the same trusts and for the same purposes as set forth in paragraphs 5 and 10 of the will.
Surely, if testator had intended to include his widow as a beneficiary in the remainder of the estate he would not have given her a life estate and, as a condition precedent to her enjoying the same, provided that she release not only her right of dower but also any other interest that she might have in the estate other than a life interest.
Again, testator always referred to "my heirs" as contingent remaindermen and never used the singular. Now, it seems inconceivable that testator, having given to his wife a life estate in lieu of dower and upon such a release as she was required to make of any and all other rights and claims which she might have or make against the estate, that he intended her as one of his "heirs" to take a contingent remainder. He certainly intended to exclude her and if so, he knew that his only "heir" would be his daughter. Hence, it would seem that by using the plural of the word "heir" he also *Page 178 
intended to exclude the daughter. It will be observed that this plural use of "my heirs" occurs six times in the eleventh and twelfth paragraphs of the will, and "for their own use" likewise six times therein, while in the thirteenth clause, in the event his widow refused to release her dower and other claims against the estate than as a life tenant, he provided, "then I direct that the payments" (to the widow) be made to his daughter, "her issue and my heirs-at-law." (Daughter died without issue.)
Again, in the fifth and sixth clauses of the will, testator provided for legacies to be paid to his daughter, three months, six months, nine months and twelve months after his death, with provision that in case of her death all unpaid legacies to go to his widow, and in the sixth clause, like installment legacies to the widow, with provision that in case of her death the unpaid installments to go to the daughter.
Certainly the intent of the testator was a distribution in such case to more than one person. It would seem from all the above that the undoubted intent of testator was to exclude his widow and daughter from anything other than the life interest created for their benefit.
Cases which support this view are quite numerous. Oleson v.Somogyi, 90 N.J. Eq. 342; 107 Atl. Rep. 798; affirmed, 93 N.J. Eq. 506; 115 Atl. Rep. 526, in so far as the court therein found that testator, having used the plural words "heirs" and "among," showing an intention that distribution be made to more than one person, is in point. It is true in the instant case that if it did not clearly appear that testator intended to exclude his widow that the plural use of the word "heir" would have applied to the widow and daughter, but the intention to exclude clearly appears, leaving the daughter his only heir, and his use of the plural shows his intention to have the remainder distributed among his heirs and not to his heir.
In Carter v. Martin, 122 N.J. Eq. 262; 193 Atl. Rep. 704,
the court held that the words "heirs-at-law" and "next of kin" applied to the life tenants because they were in esse at the time of testator's death and the description therefore *Page 179 
fitted them. This finding was reversed, 124 N.J. Eq. 106;199 Atl. Rep. 589. In Carter v. Martin, testator died leaving a widow and two children surviving and restricted them from assigning or pledging the corpus of the estate, having created a life interest for the widow and two children. Herein, testator was survived by his widow and daughter, for whom life estates were created, and by the terms of the will he went further than did testator in the Carter Case by providing that the life tenants be restricted to income and profits and expressly denied the use "of any portion of the principal of my estate." In theCarter Case the court said that it is clear from a reading of the will that the testator intended to preserve his estate for remaindermen after his wife and children had been provided with an income for life and that the intention of the testator was to exclude from the class of heirs-at-law and next of kin the life tenants. In the instant case, testator's will, it seems to me, more clearly evinces an attempt by the testator in his well-drawn will to preserve his estate for the remaindermen after the death of his wife and daughter, and clearly intended that possible issue of the daughter be taken care of (there were none), with the intent to exclude the life tenants from any interest in the remainder, and it also appears to me that the concluding remarks of the court in the Carter Case are applicable in considering the will sub judice. The court, at the bottom of page 108, said:
"It is inconceivable that a testator should have made provision for so many contingencies as provided for in this will, if he had simply meant that his wife and children should take his entire estate. The intention is apparent throughout the whole instrument to provide support for the testator's wife and children during their lives with the remainder in certain proportion to their issue, if any, and in the event that the children should die without issue the estate was then to go to the testator's heirs-at-law and next of kin. He intended by the use of those words in this elaborately drawn instrument to transmit the estate to a class of heirs different from his wife, children and their issue. He clearly intended that the collateral branch of his family should take and enjoy his frugality upon default of the direct line." *Page 180 
The next question is, did decedent's residuary estate vest in his next of kin upon his death or not until the death of the surviving life tenant?
The rule of our courts, as laid down by Williams onExecutors, comes into operation in answering this question,i.e., if "it is the testator's intention to exclude the tenant for life from the description of next of kin, the expression must be necessarily understood as meaning the testator's next of kin living at the death of the tenant for life."
In the Oleson v. Somogyi Case, supra, the language was, "at and after the death of my son * * * I direct distribution among my legal heirs who shall be at law entitled * * *." The son died leaving a widow, who contended that the corpus vested in testatrix' son — her husband — at the time of testatrix' death. The issue of a brother of testatrix opposed. The son, at the death of testatrix, was sole heir and next of kin and the court found that testatrix, in creating a life estate for him, with the use of the corpus in certain events, together with the use of the plural of the word "heir" demonstrated that the son was excluded as a remainderman.
In that case the direction to pay and distribute was to those "who shall be entitled" and the court held that this indicated those entitled at the death of the life tenant.
In Genung v. Best, 100 N.J. Eq. 250; 135 Atl. Rep. 514, the testatrix died leaving a husband, brother and sister and children of deceased brothers and sisters. The husband had, concededly, only a life estate in the realty but claimed all of the personalty under the statute of distribution. On the other hand, it was contended that it was the intention of the testatrix to give to the husband a life estate in both the real and personal property.
In that case the language was demonstrative of an intent to limit the estate in personalty to a life estate and the distribution as in the future. "Among" would not apply to a sole beneficiary (husband). The word "personal" meant her heirs and representatives and not his. The use of the words "shall go to" held to be those at the death of the life tenant.
It will be observed that the above cases holding that the estate vested at the death of the life tenant were based on *Page 181 
language used by testatrix in the will itself, which justified that finding, but the underlying principle, as laid down byWilliams, as heretofore quoted, sets forth more than one situation where the estate vests on the death of the life tenant, (a) where the context demonstrates that the person or persons to take under the description of next of kin is a person or persons to be ascertained at a future period; (b) or that it istestator's intention to exclude the tenant for life from thedescription of next of kin.
The result is that, while with reference to those to take as heirs-at-law, testator did not use words of futurity, he did plainly evidence his intent to exclude the life tenants from the description of next of kin and "must be necessarily understood as meaning the testator's next of kin living at the death of the tenant for life."
A careful reading of other cases, such as Miers v. Persons,92 N.J. Eq. 17; 111 Atl. Rep. 638; In re Buzby, 94 N.J. Eq. 151;118 Atl. Rep. 835; American Builders Corp. v. Galligan, 93 N.J. Eq. 51; 114 Atl. Rep. 329; Welsh v. Crater, supra; Tuttle v.Woolworth, 62 N.J. Eq. 532; 50 Atl. Rep. 445, and In reHubert, 98 N.J. Eq. 35; 129 Atl. Rep. 698, indicates that unless aided by some language in the will which indicates a contrary intention, that the estate in remainder vests on the death of testator and not that of the life tenants, but in those cases the court did not find that the intention of the testator was to exclude the life tenant.
The will in the Carter Case, as found in 122 N.J. Eq. 262
(at p. 264); 193 Atl. Rep. 704, is in somewhat the same language as the will sub judice. In the Carter Case the language used is:
"(b) on the death of my said wife they are to pay over * * * one-sixth of the principal of my estate * * *. (c) on the death, before my said daughter and after my said wife, of my son Benjamin, leaving lawful issue * * * they are to pay over. (d) on the death of my said daughter before my said son and after the death of my said wife, they are to pay over, * * * but if at the death of my said daughter he should be already deceased leaving lawful issue, *Page 182 
* * * they are to pay over and transfer the remaining three-fifths of the principal of my estate to such lawful issue in equal shares; or if at the death of my said daughter he shall be so deceased, leaving no lawful issue as aforesaid, they are to pay over and transfer the then entire principal of my estate to my heirs-at-law and next of kin."
In the Leaming will the language used in paragraph 10, after the creation of the life estate for the benefit of the daughter is: "In the event of my said daughter dying leaving issue,then" the corpus of the fund to be used for the benefit of the issue until the youngest arrives at the age of twenty-one years, "at which time I order and direct my said executors and trustees to pay over." "In the event of my said daughter dying without issue and during the widowhood of my said wife, then I order and direct" the payment to the wife of the yearly income during her widowhood, "and at her death or re-marriage I order and direct * * * the corpus of my estate" be paid to my heirs-at-law for their own use. "In the event of my said daughter dying without issue and subsequent to the death or re-marriage of my said wife, then I order and direct that the portion of thecorpus of my estate * * * be paid over to my heirs-at-law for their own use."
Paragraph 11, which creates a life estate for the benefit of the widow and provides for payment of the corpus on the death or re-marriage of the widow, is in substantially the same language.
From the above it will be seen that the court of errors and appeals, in its latest pronouncement, sustained the principle that if it be found from the will that it is the testator's intention to exclude the tenant for life from the description of the next of kin, that "the expression must be necessarily understood as meaning the testator's next of kin living at the death of the tenant for life."
It certainly cannot be said that the court of errors and appeals, in its consideration of the Carter Case, overlookedMiers v. Persons, supra, or In re Buzby, supra, and it cites with approved Oleson v. Somogyi, supra; American BiuldersCorp. v. Galligan, supra, and Genung v. Best, supra. *Page 183 
Chief-Justice Gummere, in American Builders Corp. v.Galligan, supra, held that the fact that the life tenants are among the heirs-at-law of testator does not of itself indicate the purpose to postpone vesting, and in that case held that the remainder vested on the death of the testator, but the life tenants were not excluded as heirs-at-law, nor were they in theBuzby Case or the Miers Case.
The result is that decedent's residuary estate vested in his next of kin as of the death of his daughter, the surviving life tenant, and it necessarily follows that the bequests made by her in her will, being contingent upon a determination "after my death that I have any interest in the estate of my father — other than a life estate," passed nothing to the beneficiaries therein named.
The parties have elaborately set forth a table of those who would be entitled to take as above indicated and it will not be necessary to enumerate them herein. If counsel should fail to agree, the matter will be disposed of on the fixing of the decree.