33 N.J. Super. 198 (1954)
109 A.2d 685
LOUIS SEVEL, INDIVIDUALLY AND LOUIS SEVEL AND GUARANTEE BANK AND TRUST COMPANY, A CORPORATION, EXECUTORS UNDER THE WILL OF FANNIE SWARZMAN, DECEASED, PLAINTIFFS,
v.
ABRAM SWARZMAN, MAINLAND NATIONAL BANK OF PLEASANTVILLE, A CORPORATION, MORRIS DIAMOND, ABRAHAM DIAMOND, FANNIE LEVINE, FREDA RAPPOPORT, LEAH KEATING AND TOBA RIBA YUDELOWITZ, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 4, 1954.
*200 Mr. M. Milton Singer, for plaintiffs.
Mr. Irving A. Lilienfeld for defendant Abram Swarzman (Messrs. Lilienfeld & Lilienfeld, attorneys).
Mr. Saul W. Arkus for defendant Toba Riba Yudelowitz (Messrs. Backer & Arkus, attorneys).
HANEMAN, J.S.C.
This suit involves the construction of the will of one Fannie Swarzman, and an agreement between Fannie Swarzman and her husband Abram Swarzman. The facts in connection herewith are as follows:
On or about April 30, 1943 Fannie Swarzman and her husband Abram Swarzman entered into the following agreement:
"It is understood and agreed between Abram Swarzman and Fannie Swarzman, as follows:
In consideration of the completion of settlement covering the purchase of premises #1920 Pacific Avenue, Atlantic City, New Jersey, in which the parties hereto are taking title by the entireties;
It is agreed that in the event Abram Swarzman should pre-decease Fannie Swarzman, so that Fannie Swarzman becomes the sole title-holder, the said Fannie Swarzman shall provide for the inheritance of said property so that 50% of said property shall be devised to the heirs of Abram Swarzman as of the date of his death, and the other 50% to the heirs of the said Fannie Swarzman.
In the event that Fannie Swarzman should pre-decease Abram Swarzman, so that Abram Swarzman becomes the sole title-holder, the said Abram Swarzman shall provide for the inheritance of said property so that 50% shall be devised to the heirs of Fannie Swarzman as of the date of her death; and the other 50% to the heirs of the said Abram Swarzman."
*201 On November 29, 1953 Fannie Swarzman died leaving a last will and testament which provided, in part, as follows:
"I give and devise my undivided one-half interest in real estate known as 1920 Pacific Avenue, Atlantic City, New Jersey, to my brother, Louis Sevel, of Cleveland, Ohio, and his heirs, absolutely and forever."
Fannie Swarzman died without leaving any children, and left her surviving, as her sole heir-at-law, under the statute of descent, her husband, Abram Swarzman. Abram Swarzman is still living.
This was a second marriage for both Fannie Swarzman and Abram Swarzman. The former had no children by either marriage. The latter had two children born of his prior marriage. At the date of the execution of the agreement Fannie Swarzman was 59 years of age and Abram Swarzman was 65 years of age.
The plaintiff Louis Sevel contends that he is the person designated by Fannie Swarzman to whom Abram Swarzman must devise a one-half interest in the property at 1920 Pacific Avenue, since the word "heirs" as used in the above agreement meant "devisees" or "designees."
The defendant Abram Swarzman contends that in the light of the fact that Fannie Swarzman left her surviving no children, that he is the person to whom the property at 1920 Pacific Avenue should be devised at his death, and therefore, he is presently vested with the entire fee, since he is both the life tenant and the remainderman.
The agreement is an agreement to make reciprocal wills. The same rules and canons of construction applicable to wills will be applied to both the testament of Fannie Swarzman and the agreement.
In construing a will, the court may depart from its strict words and read a word or phrase in a sense different from that which is ordinarily attributed to it, when such departure is necessary to give effect to what appears on a full view to have been the intention of the testator. Unless a contrary usage is evident from the context, words should be *202 given their primary or ordinary meaning. Technical uses and rules will not be permitted to subvert the obvious intention. In re Fisler's Estate, 133 N.J. Eq. 421 (E. & A. 1943); Duane v. Stevens, 137 N.J. Eq. 329 (Ch. 1945).
It must be recognized that by the established law of this State the word "heirs," in the absence of a clear intention to the contrary, is deemed to connote those persons who would take under the statute of descent. Trenton Trust Co. v. Gane, 125 N.J. Eq. 389 (Ch. 1939); Edwards v. Stults, 97 N.J. Eq. 44 (Ch. 1925); White v. Willever, 112 N.J. Eq. 546 (Prerog. Ct. 1933), affirmed 118 N.J. Eq. 70 (E. & A. 1935).
It has also been held that the words "heirs-at-law and next of kin" have no fixed meaning to be applied in all cases. Carter v. Martin, 124 N.J. Eq. 106 (E. & A. 1938), and that the intention of the testator as to the meaning to be accorded to those words, whether technical or otherwise, is to be gleaned from the will. Martling v. Martling, 55 N.J. Eq. 771 (E. & A. 1896). In this connection, in numerous occasions courts have concluded that where the words "heirs-at-law" were used in a will in reference to personalty they should be deemed to mean "next of kin" and the converse where the words "next of kin" have been used when dealing with realty,  they should be deemed "heirs-at-law." Scudder v. Vanarsdale, 13 N.J. Eq. 109 (Ch. 1860); Edwards v. Stults, 97 N.J. Eq. 44 (Ch. 1925); In re Allwood's Estate, 118 N.J. Eq. 172 (Prerog Ct. 1935); Trenton Trust Co. v. Gane, 125 N.J. Eq. 389 (Ch. 1939).
Where it is the testator's intention to exclude a tenant for life from the description of heirs-at-law or next of kin, such life tenant is excluded, although he would technically be a member of the described class. Genung v. Best, 100 N.J. Eq. 250 (Ch. 1926); Carter v. Martin, 124 N.J. Eq. 106 (E. & A. 1938); Camden Trust Co. v. Matlock, 125 N.J. Eq. 170 (Ch. 1939); Oleson v. Somogyi, 90 N.J. Eq. 342 (Ch. 1919).
It must be apparent from the outset that Fannie Swarzman and her husband Abram Swarzman held the title to the *203 real estate here involved as tenants by the entirety and that upon the death of either of them, absent the agreement, the full fee would vest in the survivor.
The parties to the agreement were quite apparently attempting to accomplish that which would have been accomplished had they taken title as tenants in common, with an agreement that the survivor was to have a life interest in the one-half interest of the prior deceased spouse, with the remainder in some person of the blood of the person so first dying. This purpose would negative any intention that either the husband or wife were to be deemed the "heir" of the other, as provided in the statute of descent. It would be a natural desire on the part of both husband and wife, in the light of the fact that no children were born of their marriage, to favor their own blood relatives upon their death, and this desire was demonstrated by the agreement. Although there is a legal presumption that there is no age at which a woman is incapable of bearing children, it would be flying in the face of common sense not to take judicial notice of the fact that it is a rather rare instance when a woman approaching 60 years of age does bear children. Coupling this circumstance with the other facts here present, it would be a normal presumption to conclude that they considered that they had an estate equivalent to a tenancy in common, and since they had no children of their marriage, and no reasonable prospect of having such children, desired, after the intervening life estate, to have the remainder vested in a person of the blood of, and to be designated by the person first dying.
Further strength is added to the conclusion that the word "heirs" was not used in its technical sense, by the fact that at the time the agreement was prepared and executed, Abram Swarzman was the sole heir of Fannie Swarzman. Had the parties contemplated that the agreement meant those persons designated in the statute of descent, the entire agreement was unnecessary, as the same result would have obtained sans any agreement if Fannie Swarzman predeceased Abram Swarzman, the vesting in Abram Swarzman being automatic as the surviving spouse of a tenancy by the entirety.
*204 If the agreement were to be construed as urged by Abram Swarzman, i.e., that the word "heirs" must receive its technical meaning, he would be the person to whom he would devise 50% of the property at his own death, and by his own will. This would create not only an anomalous but as well a ridiculous situation.
The agreement was quite patently prepared by some one not skilled in the law. The advice upon which the parties relied, whether their own or that supplied by some third person, was faulty, especially in the light of the manner in which the same result they intended could have been accomplished with greater ease by a conveyance to them as tenants in common, instead of as tenants by the entirety.
The layman does not normally associate the word "heirs" with the statute of descent. He generally considers it a term relating to any inheritance resulting from a devise or a bequest, and hence synonymous with the words "devisees" or "legatees."
The parties to the agreement, as gathered from the instrument itself and the circumstances surrounding the said parties at the time of its execution, clearly intended to use the word "heirs" in a non-technical sense, i.e., as synonymous with "devisees" or "designees."
It is therefore here held that Abram Swarzman has a fee simple title to a one-half interest and a life estate in the other one-half interest in 1920 Pacific Avenue, Atlantic City, New Jersey, with the remainder of the latter one-half interest in Louis Sevel.
Judgment will be entered accordingly.