38 N.J. Super. 304 (1955)
118 A.2d 876
HELEN S. ZEIGENFUS AND ELMER F. ZEIGENFUS, HER HUSBAND, PLAINTIFFS,
v.
WILSON A. SNELBAKER AND RUTH L. SNELBAKER, HIS WIFE; RUTH FOX AND HERBERT FOX, HER HUSBAND; THE WOODBURY TRUST COMPANY, TRUSTEE U/W WILLIAM B. SNELBAKER, DECEASED; THE WOODSTOWN NATIONAL BANK AND TRUST COMPANY AND S. RUSLING LEAP, TRUSTEES U/W ASHBROOK D. SNELBAKER, DECEASED; ELLA S. LOVELAND AND ARTHUR S. LOVELAND, HER HUSBAND; AND SARAH T. SNELBAKER, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 30, 1955.
*305 Mr. Oakford W. Acton, Jr., for plaintiffs.
Mr. Howard G. Kulp, Jr., for defendants Wilson A. and Ruth L. Snelbaker (Messrs. Brown, Connery, Kulp & Wille, attorneys).
Mr. Fred A. Gravino, for defendants Ruth and Herbert Fox.
Mr. George B. Marshall, for defendant Woodbury Trust Company.
*306 Mr. S. Rusling Leap, for defendants The Woodstown National Bank and Trust Company and S. Rusling Leap, trustees.
Mr. John F. Bacon, for defendants Ella S. and Arthur S. Loveland.
HANEMAN, J.S.C.
The sole question herein is the distribution of the proceeds of a sale resulting under a suit for partition. The facts in connection herewith are as follows:
Anna M. Carney died on October 21, 1924 leaving a last will and testament which was duly probated by the Surrogate of Salem County. At the time of her death she was seized of a parcel of land referred to in her will as a "house and lot on Dickinson Street, Woodstown," and more particularly described in the complaint herein.
The will, so far as it refers to the said premises, provides as follows:
"I give, devise and bequeath to my daughter, Anna Naomi Snelbaker, the house and lot on Dickinson Street, Woodstown, where I now live and all the household goods and furniture therein, to have and to hold said house and lot and household goods and furniture for her lifetime. Should she die leaving lawful issue, or issue of any surviving such issue, to take said house and lot and furniture and household goods, but if she leave no lawful issue or issue of any surviving her then the same to go to my next nearest heirs at law.
All the rest and residue of my Estate I give, devise and bequeath to my daughter Anna Naomi Snelbaker if she survive me. If she does not survive me but leaves lawful issue or issue of any surviving me, such issue to take said residue, but in default of such issue so surviving me said residue to go to my next of kin as if I had died intestate."
The present status of the heirs at law of the testatrix is as follows:
Children:
1. Ashbrook D. Snelbaker  died in 1944, leaving no children.
2. Anna Naomi Snelbaker (life tenant), died in 1954, leaving no children.

*307 3. William Snelbaker  died in 1949, leaving a child of Mary Tuttle, i.e., Ruth Fox, and a son, Wilson A. Snelbaker.
4. I. Dayton Snelbaker  died in 1951, leaving a daughter, Ella Loveland.
5. Joel Snelbaker  predeceased testatrix, leaving a daughter, Helen Zeigenfus.
Grandchildren:
1. Mary Tuttle  died in 1941 or 1942.
2. Wilson A. Snelbaker  living.
3. Ella Loveland  living.
4. Helen Zeigenfus  living.
Great Grandchild:
1. Ruth Fox  living.
Anna Naomi Snelbaker died on August 16, 1954, leaving no issue nor issue of such issue her surviving.
The questions here involved are twofold: (1) Did testatrix intend, by the phrase "next nearest heirs at law" to designate persons who would take as heirs at law under the statute of descent, or as nearest blood relations? (2) Are such "next nearest heirs at law" to be determined as of the date of testatrix' death or the life tenant's death?
In Sevel v. Swarzman, 33 N.J. Super. 198 (Ch. Div. 1954), the court said:
"In construing a will, the court may depart from its strict words and read a word or phrase in a sense different from that which is ordinarily attributed to it, when such departure is necessary to give effect to what appears on a full view to have been the intention of the testator. Unless a contrary usage is evident from the context, words should be given their primary or ordinary meaning. Technical uses and rules will not be permitted to subvert the obvious intention. In re Fisler's Estate, 133 N.J. Eq. 421 (E. & A. 1943); Duane v. Stevens, 137 N.J. Eq. 329 (Ch. 1945).
It must be recognized that by the established law of this State the word `heirs,' in the absence of a clear intention to the contrary, is deemed to connote those persons who would take under the statute of descent. Trenton Trust Co. v. Gane, 125 N.J. Eq. 389 (Ch. 1939); Edwards v. Stults, 97 N.J. Eq. 44 (Ch. 1925); White v. Willever, 112 N.J. Eq. 546 (Prerog. Ct. 1933), affirmed 118 N.J. Eq. 70 (E. & A. 1935).
It has also been held that the words `heirs-at-law and next of kin' have no fixed meaning to be applied in all cases. Carter v. Martin, 124 N.J. Eq. 106 (E. & A. 1938), and that the intention of the testator as to the meaning to be accorded to those words, whether technical or otherwise, is to be gleaned from the will. *308 Martling v. Martling, 55 N.J. Eq. 771 (E. & A. 1896). In this connection, in numerous occasions courts have concluded that where the words `heirs-at-law' were used in a will in reference to personalty they should be deemed to mean `next of kin' and the converse where the words `next of kin' have been used when dealing with realty,  they should be deemed `heirs-at-law.' Scudder v. Vanarsdale, 13 N.J. Eq. 109 (Ch. 1860); Edwards v. Stults, 97 N.J. Eq. 44 (Ch. 1925); In re Allwood's Estate, 118 N.J. Eq. 172 (Prerog. Ct. 1935); Trenton Trust Co. v. Gane, 125 N.J. Eq. 389 (Ch. 1939).
Where it is the testator's intention to exclude a tenant for life from the description of heirs-at-law or next of kin, such life tenant is excluded, although he would technically be a member of the described class. Genung v. Best, 100 N.J. Eq. 250 (Ch. 1926); Carter v. Martin, 124 N.J. Eq. 106 (E. & A. 1938); Camden Trust Co. v. Matlock, 125 N.J. Eq. 170 (Ch. 1939); Oleson v. Somogyi, 90 N.J. Eq. 342 (Ch. 1919)."
Generally, a devise to heirs of a testator are those who stand in that relationship at the time of the death of the testator. Camden Trust Co. v. Matlock, 125 N.J. Eq. 170 (Ch. 1939); In re Buzby's Estate, 94 N.J. Eq. 151 (E. & A. 1922); Tuttle v. Woolworth, 62 N.J. Eq. 532 (Ch. 1901); Francisco v. Citizens Trust Co. of N.J., 132 N.J. Eq. 597 (Ch. 1941), affirmed in 133 N.J. Eq. 28 (E. & A. 1943); Commercial Trust Co. of N.J. v. Adelung, 136 N.J. Eq. 37 (Ch. 1944), affirmed in 137 N.J. Eq. 541 (E. & A. 1946).
It must as well be recognized that if there is nothing in the context of the will or the circumstances of the case to controvert the natural meaning of the testator's words, his heirs-at-law living at his death will be entitled to take, and if a life tenant happens to be such an heir, he is not, on that account, excluded. But where the context of the will demonstrates that the persons to take as heirs are to be ascertained at a future period or that it is testator's intention to exclude the life tenant, the expression must be understood to mean such of testator's heirs who were living at the death of the life tenant. Camden Trust Co. v. Matlock, supra; Francisco v. Citizens Trust Co. of N.J., supra; Commercial Trust Co. of N.J. v. Adelung, supra.
Further fundamental canons of construction of wills are that every word must be, if possible, employed to aid in *309 the ascertainment of the testator's intent; that doubts must be resolved in favor of the testator having said what he meant, and that when words are plain and clear they must be used in their ordinary sense. Kutschinski v. Sheffer, 109 N.J. Eq. 659 (E. & A. 1932); Woodruff v. White, 78 N.J. Eq. 410 (Ch. 1911), affirmed 79 N.J. Eq. 225 (E. & A. 1911); The Hackensack Trust Co. v. Bogert, 24 N.J. Super. 1 (App. Div. 1952); Central Hanover Bank & Trust Co. v. Bruns, 16 N.J. Super. 199 (Ch. 1951); Hoffmann v. Jinks, 134 N.J. Eq. 91 (E. & A. 1943).
It becomes necessary, therefore, to examine the particular will here under construction, in the light of the foregoing general canons.
The words "heirs-at-law" are modified by the words "next nearest." Were we to totally ignore these words it could be only upon the conclusion that they were surplusage. As noted, if possible, every word used by a testator must be employed in the ascertainment of his intent.
The word "next" has been defined as follows:
"Next  1. Nearest; having nothing similar intervening; as: (a) adjoining in a series; immediately preceding or following in order; as, in reference to place; next chapter; next house; in reference to degree, quality, rank, right, or relation; next heir; next of kin; in reference to time: next day; next Monday. (c) first in nearness, without implication or succession or contiguity; first located, appearing, happening, or the like, as, his next neighbor was five miles away."
The word "near" has been defined as follows:
"Near  1. Closely akin or related by blood; as, a near relative. 2. close to one's interests and affections, etc., touching or affecting, intimately; as, one's near affairs, friends. 3. Not far distant in time, place or degree; not remote; adjoining; nigh. `Every country, far and near.'"
It would therefore appear that the testatrix did not use the words "heirs-at-law" in their technical sense. By the use of the words "next nearest" she exhibited an intent to restrict the import of the words "heirs-at-law" beyond the recognized meaning accorded to them under the statute of *310 descent. The word "nearest" is employed in an exclusive sense. It denotes an exclusion of all persons who might fall within the designation "heirs-at-law," except those who were closest related to her by blood. This conclusion is strengthened by the presence of the word "next" which serves not only to exclude Anna Naomi Snelbaker and her issue, but as well serves to designate the time when the persons who are to take should be ascertained. Nor can we ignore the word "then," which is here used in a substitutionary sense as an adverb of time. By its use the testatrix has excluded Anna Naomi Snelbaker as an heir-at-law. As a matter of fact, it would be rather anomalous to suggest that the testatrix intended that Anna Naomi Snelbaker should be deemed a remainderman included within the designation heirs-at-law where there was an original gift of the remainder to her issue and where the substitutionary donees took only upon the death of the life tenant and the failure of issue to her survive. The testatrix could here not have intended that the membership of the class who would ultimately take should be fixed before the determination that there was a devise to that class.
The rationale of the foregoing applies not only to Anna Naomi Snelbaker, but to those other persons who fall within the statutory acceptation of the words "heirs-at-law." To hold otherwise would be inconsistently illogical.
Although it is recognized that cases construing similar provisions to that under consideration are ofttimes not finally conclusive because of the difference in general context of wills, somewhat similar provisions were construed in Sloan v. Beatty, 1 Del.2d 581, 116 N.E.2d 375 (Ill. Sup. Ct. 1953), and Wells v. Gatch, 21 Ohio App. 140, 152 N.E. 772 (Ohio Ct. App. 1925).
It is therefore here held that the testatrix did not use the words "heirs-at-law" in their technical sense, but that she intended to devise the remainder to those who were her nearest blood relations at the death of her daughter, Anna Naomi Snelbaker, without issue, or issue of issue her surviving.