FREDERIC W. STEVENS, EUGENE STEVENSON, EDMUND B. LEAM-
ING, VIVIAN M. LEWIS, JOHN H. BACKES, JOHN GRIFFIN,
JOHN E. FOSTER AND MERRITT LANE, VICE-
CHANCELLORS.

WILLIAM F. BARRY

*v.*

WILLIAM ROSENBLATT et al.

[Decided December 10th, 1918.]

1. Section 6 of the act of March 3d, 1915 (*P. L. 1915 p. 61*), which provides that in all cases where any person shall die seized of any lands in his or her own right in fee-simple without devising the same, leaving him or her a widow or husband surviving, such widow or husband, as the case may be, shall take and have a life estate in one-third of such lands, is valid and constitutional, because the "object," namely, the "descent" of

1

land, is embraced in the title which is "An act amendatory of and supplemental to an act entitled 'An act directing the descent of real estates,' approved April sixteenth, eighteen hundred and forty-six."

2. Section 6 of the act of March 3d, 1915 (*P. L. 1915 p. 61*), was repealed by act of March 29th, 1917 (*P. L. 1917 p. 844*) ; but, as complainant's wife died intestate and without issue April 17th, 1916, while the acts was still in force, leaving her 'husband, the complainant, her surviving, he took by descent a one-third interest for life in the land of which she died seized, and, his estate being vested, was not affected by the repealer.

---

On exception to master's report.

*Mr. Abe J. David,* for the complainant.

*Mr. James C. Connolly,* for the defendants.

WALKER, CHANCELLOR.

The bill in this case is one for partition. The master has reported that the lands are so situate that a partition thereof cannot be made without great prejudice to the owners of the same and recommends a sale in lieu of actual partition.

The only question is as to whether the complainant is entitled to an interest in the premises described in the bill of complaint. His claim arises in this way: John W. Gaynor died seized of the lands in question, leaving a will in which he devised the same to his three children, one of whom is Margaret Gaynor, who, on January 26th, 1912, married the complainant. She died intestate April 17th, 1916. No child was born of this marriage. It is not out of place to remark that the estates of the other children of the testator were conveyed to the defendants Rosenblatt.

The claim of the complainant to an interest in the lands of which his late wife died seized arises under section 6 of the act of March 3d, 1915 (*P. L. 1915 p. 61*), section seven of which was declared unconstitutional in *Reese* v. *Stires, 87 N. J. Eq. 32.* The title of that act is:

"An act amendatory of and supplemental to an act entitled 'An act directing the descent of real estates,' approved April sixteenth, eighteen hundred and forty-six."

Section 3 of the act of 1915 amends section 6 of the act of which it is amendatory, being the act directing the descent of real estates. *Comp. Stat. p. 1917.* The only change thus created is to eliminate from section 6 of the act which it amends the *proviso* that nothing contained in it shall be construed to bar or injure the rights of a husband as tenant by the curtesy or a widow's right of dower. This was to harmonize the amendatory act with the provision contained in its section 7, abolishing estates and interests of dower and curtesy, and which provision was held by me to be unconstitutional in *Reese* v. *Stires,* as above stated.

Section 6 of the amendatory act of 1915 is a new section, and is therefore supplementary to, rather than amendatory of, the act directing the descent of real estates. It provides—

"In all cases where any person shall die seized of any lands, tenements or hereditaments, in his or her own right in fee-simple, without devising the same in due form of law, leaving him or her a widow or husband surviving, such widow or husband, as the case may be, shall take and have a life estate in one-third of such lands, tenements and hereditaments; provided, this section shall not affect the right of such husband or widow to take such lands, tenements or hereditaments in fee-simple as provided for in section six of the act to which this is supplemental, the same being section three of this act."

By section 3 of the act of March 29th, 1917 (*P. L. 1917 p. 844*), entitled

"An act amendatory of 'An act amendatory of and supplemental to "An act directing the descent of real estates," approved April sixteenth, eighteen hundred and forty-six,' which amendatory act was approved March third, nineteen hundred and fifteen, and repealing certain provisions of such amendatory act of March third, nineteen hundred and fifteen, which abolish dower and curtesy and give to surviving husband or widow a life estate in one-third of all real estate of which the intestate died seized in fee-simple,"

section 6 of the amendatory act of 1915 is repealed. Therefore the provision that upon the death of a husband or wife leaving a widow or husband surviving, such widow or husband should take a life estate in one-third of the lands of which the late spouse should die seized without devising the same, existed as the law of this state for a little over two years, namely, from

March 8th, 1915, to March 29th, 1917. And as the complainant's wife died intestate without issue, leaving him surviving, during this period, namely, on April 17th, 1916, the complainant is entitled to a life estate in one-third of the share or interest of his deceased wife, if section 6 of the act of 1915 is valid.

The contention of the defendants is that the complainant is not entitled to any interest in the premises for the reason that section 6 of the act of 1915 is unconstitutional, the theory being that the provision in section 6 casting a life estate of one-third interest in lands upon a surviving spouse where there has been no devise, is not expressed in the title of the act; and *Reese* v. *Stires, supra,* is relied upon as authority for this proposition. In that case it was held:

"The act of March 3d, 1915 (*P. L. 1915 p. 61*), entitled 'An act amendatory of and supplemental to "An act directing the descent of real estates," approved April 16th, 1846,' which in terms abolishes estates and interests in dower and courtesy, violates article 4, section 7, *placitum* 4 of the constitution of New Jersey, which provides *inter alia* that 'every law shall embrace but one object and that shall be expressed in the title,' and is therefore null and void so far as it abolishes dower and curtesy—as the single object expressed in the title concerns only the descent of real estates, and dower and curtesy do not descend."

The question presented, therefore, is, whether the gift by law of one-third of an estate for life to the surviving husband or wife of a spouse who dies intestate, as provided for in section 6 of the act of 1915, is valid.

If the contention of the defendants is to prevail it must be held that the common law rules of descent are unalterable in this state, which is palpably not so. Such a situation could only be created by constitutional provision, and there is none such; on the contrary, that instrument in article 4, section 7, *placitum* 11, provides that the legislature shall not pass any *private, local or special act changing the law of descent.* This means that the legislature may not enact a law providing for gavelkind in Sussex county and borough-english in Cape May. That either species of tenure might be enacted for the whole

state seems plain. That neither ever will be seems equally plain.

Now, it must be conceded that section 6 of the act of 1915, is neither private, local nor special, but is *general* in its scope and application. It provided that in all cases where any person shall die seized of any lands, &c. It is true that the common law does not devolve such an interest as is provided for in section 6 on any surviving husband or wife. But the common law may be altered in that regard. This was expressly decided by Chancellor Zabriskie in *Fidler* v. *Higgins, 21 N. J. Eq. 138,* where he said (at *p. 147*) :

"The common law of England, which is adopted in this state, especially as regards real estate, has certain clear and well-settled rules or canons of descent, which, so far as not changed by statute, our courts have always recognized and adhered to. These canons have never been held to be repealed by doubtful words, but only by express words or necessary implication. Among these rules or canons is one, that inheritance shall lineally descend, but shall never ascend. A statute would repeal this rule, and where it directed in certain cases that a father or mother of the decedent should inherit his lands, the rule was so far repealed. But when the statute directed that in certain cases the lands should go to persons in equal degree of consanguinity to the intestate, although a grandmother is, by any rule of reckoning, kindred in the second degree, and is included in the terms of the statute, yet it was held that this rule of the common law was not repealed by such an implication as this, but that as this provision could in many cases have effec' without repealing that rule, it must be intended to have been made subject to that rule, and not in derogation of it. Such is undoubtedly the correct rule of interpretation where the statute does not in any other part indicate design to change the established rule. This is most clearly and logically shown in the opinion of the supreme court in the case of *Taylor* v. *Bray,* above referred to."

While "descent" at common law is the title acquired by one by right of representation as heir-at-law upon whom an estate

is cast on the death of an ancestor, nevertheless, "descent" in its broadest sense signifies an inheritance cast upon anyone capable of receiving it, whether heir at common law or not, upon the death of an individual. And while the rule of the common law was that estates always descended and never ascended, the ascent of estates by virtue of our statutes has been so long the undisputed law as to clearly indicate, if anything be wanting for that purpose, that the legislature has the power to designate the persons upon whom real estate shall be devolved upon the death of others, whether those estates descend or ascend, and whether they shall go to those related by consanguinity or to strangers in blood, as for instance, making husband and wife heirs to their respective spouses—the very provision under review in the case at bar.

In *State* v. *Engle, 21 N. J. Law 360,* it was held that it is a well settled principle that if a statute makes use of a word the meaning of which is well known and which has a definite sense at common law, it shall be received in that sense, unless from some reason it clearly appears that it was intended to use the word in a different signification; that there was nothing in the statute under review to show that the legislature intended to use the words "heir" and "lawful heir" in any other than the legal sense, per Mr. Justice Carpenter; and (at *p. 368*) that the words "lawful heir" must be understood to mean an heir capable of inheriting lands under the laws of New Jersey, unless from the whole scope of the act it is clearly manifest that it was not used in that sense by the legislature, per Mr. Justice Nevius. Here is an instance in which the supreme court seemed to take it for granted that the legislature could create heirs of persons who were not such at common law. It needs no citation of authority to show that the common law may be altered by statute. It would seem useless to pursue the subject further.

As section 6 of the act of 1915 devolved upon the surviving spouse a life estate in one-third of the lands of which a husband or wife died seized, such interest passed to the survivor by way of descent by act and operation of law; not the com-

mon law, it is true, but by statute. As the complainant's interest was thus acquired while the sixth section of the act in question was in force, it became in him a vested estate (which is an interest clothed with a present legal and existing right of alienation, *40 Cyc. 198*); and this estate was not, therefore, affected by the repeal of the section under review.

That an inheritance cast by statute upon a husband or wife is recognized as a "descent" appears from the second proviso of section 3 of the act of March 29th, 1917, *supra (P. L. 1917 p. 846)*—amending section 6 of the act of 1915 and restoring it to its original provisions—wherein it is provided, in a certain situation, that lands "shall descend and go to said husband or wife."

The complainant is entitled to a decree for sale in accordance with the recommendation in that behalf contained in the master's report.