The orphans court of the county of Mercer entered an order of distribution in the estate of Ellen G. White, deceased, adjudging that Bruce Willever is entitled to distribution of the corpus
of the testamentary trust provided in the will of testatrix; the other claimants have appealed. The issue is as to what is the true interpretation of the language of the will in question.
The will, executed in June, 1895, gives all the estate (after payment of debts and expenses) to the husband of testatrix for life; at his death it gives one-half thereof to her son Edgar, and the other half to a trustee in trust to convert the same into money and invest, and to pay the income to her son John, during his life, and at his death "to divide the corpus equally among all his lawful heirs other than and not being his daughter, Gertrude, by his present divorced wife; provided always and I hereby declare that if my said son, John M. White, shall die without leaving any lawful heirs or any other than his said daughter, Gertrude, then it is my will and I hereby direct my trustee to pay the whole of said corpus to my said son, Edgar W. White — absolutely."
Testatrix died November 12th, 1898, survived by her said two sons, Edgar and John, and her husband, Henry. The latter died in 1901. Edgar died intestate in 1923, leaving his wife, B. Anna White, and a daughter, Clara, as his sole next of kin and heirs-at-law. John died in 1931, leaving his wife, Catherine (by whom he had no children), his daughter, Gertrude, and Gertrude's son, Bruce Willever, a minor, now aged nineteen.
By the terms of the will, the corpus of the trust goes at John's death to all John's "lawful heirs," excluding his *Page 548 
daughter Gertrude; but if he leaves no lawful heirs or leaves none other than Gertrude, it goes to John's brother, Edgar. What does the will mean by the "lawful heirs" of John?
These words are technical legal words, and, standing alone, have a technical legal meaning. They have a special technical meaning, which was their meaning at common law, to wit — those lineal descendants of a decedent upon whom the law casts the succession to real estate immediately upon the decedent's death.Bouvier, Rawle 3d Rev.; Black L.D., 2d ed.; 29 C.J. 343; see, also, Barry v. Rosenblatt, 90 N.J. Eq. 1 (at p. 5);105 Atl. Rep. 609.
They also have a more general or less restricted technical meaning, to wit, those persons (not necessarily limited to lineal descendants), upon whom the law casts the succession to the realty of a decedent. Black L.D., supra. It is this latter meaning which is established by the law of this state as their ordinary technical legal meaning. State v. Engle,21 N.J. Law 347 (at pp. 361, 368); Barry v. Rosenblatt, supra; and in a testamentary gift of realty to "heirs," the testator is held to mean by the word "heirs" (in the absence of clear indication to the contrary), heirs-at-law — the persons who succeed to realty under the New Jersey statute of descent. See cases cited inEdwards v. Stults, 97 N.J. Eq. 44 (at p. 46);128 Atl. Rep. 609.
Technical words in a will are to be given their technical meaning, unless from a consideration of the whole will it appears that the testator did not so intend them. Hewitt v. Green,77 N.J. Eq. 345; 77 Atl. Rep. 25; Edwards v. Stults, supra.
Where the subject of a testamentary gift to "heirs" consists of personalty, instead of realty, that fact is an indication that the testator did not use the word "heirs" in its technical sense; in this state it is a controlling indication — in the absence ofother evidence of intention. It is definitely established as a rule of law in New Jersey, that in such a case the word is to be construed as meaning "next-of-kin." Scudder's Exrs. v.Vanarsdale, 13 N.J. Eq. 109; Leavitt v. Dunn, 56 N.J. Law 309;28 Atl. Rep. 590; Meeker v. *Page 549 Forbes, 84 N.J. Eq. 271; 93 Atl. Rep. 887; affirmed, 86 N.J. Eq. 255; 98 Atl. Rep. 1086; Traverso v. Traverso, 99 N.J. Eq. 514;133 Atl. Rep. 705; affirmed, sub nom. Traverso v. McMillin,101 N.J. Eq. 308; 137 Atl. Rep. 919.
Of course if there are indications evidencing that the testator did not mean "next of kin" by the word "heirs," it will not be so construed even though the gift be personalty.
In the instant case the gift is wholly personalty, but there is clear evidence from the will that testator did not mean "next of kin" by the word "heirs." The gift is to John's "lawful heirs" (other than Gertrude), but if John leaves no "lawful heirs" (other than Gertrude), "then * * * the whole of the said corpus
to my said son, Edward W. White." If "heirs" be read as "next of kin" we would have a gift at John's death to John's next of kin, but if John left no next of kin (other than Gertrude), then to Edgar. Edgar, however, was John's brother, and might well be his sole surviving next of kin (other than Gertrude) — especially since John was not then remarried. But the gift to Edgar is only if John leaves no next of kin. That contingency could not happen — there could be no failure of "next of kin" if Edgar survived. Obviously then, the testator meant by "lawful heirs" a class in which Edgar was not included; she did not mean "next of kin."
If we then go back to the meaning of "heirs under the statute of descent" we are faced with the same situation. As matters stood at the time of the execution of the will, if the testatrix and the two life tenants had died the next day, Edgar would have been John's sole surviving heir under the Descent act (Gertrude being expressly excluded). Since the gift to Edgar is only in the event of failure of heirs (other than Gertrude), the testatrix did not mean by "lawful heirs" any class in which Edgar was or might be included. She did not mean "heirs under the Descent act" any more than she meant "next of kin."
We must therefore go back to the original, special, technical or common law meaning of "lawful heirs," to wit, those who would at common law inherit realty. These are limited *Page 550 
to descendants, and Edgar therefore was not a member of that class.
It is argued that by "lawful heirs" testatrix meant "children." The answer to that is that there is nothing in the will or the surrounding circumstances to indicate that she meant "children." The indications are to the contrary. If children had been meant, the word "children" would in all probability have been used — especially since the will was drawn by a careful and able lawyer (as appears not only from his signature as a witness but also from the phraseology of the entire will).
The same facts and reasons refute the contention of other claimants that testatrix meant "lineal descendants." It is true that in interpreting particular wills, "heirs" has in many cases been construed as meaning "children" and in many others as meaning "lineal descendants," but they were cases where the evidence from the will and the surrounding circumstances indicated that such must have been, at least in all probability, the intention of testator. Such is not the case here; and in this connection an important fact or circumstance is that at the time the will was executed there were no children or lineal descendants of John in existence, other than Gertrude, and John was not even remarried. Such other children or lineal descendants as John might have were purely theoretical and contingent; they were not living persons in whom testatrix could have any personal interest, or who could take a vested interest.
The present will was drawn by an able and experienced practitioner, whose knowledge of the law and almost meticulous carefulness are well known to bench and bar, and are evidenced by the whole language of the will. Under such circumstances, the primary rule that that language is to be interpreted as meaning exactly what it says, and the secondary rule that technical words used are to be understood according to their technical meanings, are peculiarly applicable. That primary rule is altered by artificial rules of construction in certain circumstances, and at first impression those circumstances seem to be present, in the instant case; but, as we *Page 551 
have seen, consideration of the whole will shows that the application of those artificial rules is clearly negatived, and that the primary rule must prevail.
Consideration of the broad general scheme of testamentary benefaction disclosed by the will and the surrounding circumstances shows nothing in anywise tending to alter this conclusion. Testatrix had a husband and two sons. Her general plan is to give her husband a life interest in her estate, and at his death to divide it equally between the two sons. To one son she gives the one-half outright; as to the other son she, for some reason, determines to give him the use of the other half for his life, but not to give it to him outright. Possibly her reason for this was in order to prevent the possibility of any of the estate going to John's daughter, Gertrude, or to his divorced wife (through Gertrude or otherwise); she evinces a clear determination that none of it shall go to Gertrude in any event — although her reason for this is not disclosed. The remainder, which she has withheld from John, she provides shall go to his blood — to his lineal heirs (excluding Gertrude, if he leave any) — thus preserving in general the equal division between the two sons.
If John leave no lineal heirs other than Gertrude, then she provides it shall go to her other son, Edgar, or his representatives — thus avoiding the possibility of any intestacy on her part which might result in some portion going to Gertrude after all.
The words "lawful heirs," then, are to be given their strict technical meaning of "heirs under the common law," or heirs limited to lineal descendants.
The only lineal descendants of John who survived him are his daughter, Gertrude, who is expressly excluded as a taker; and Gertrude's son (John's grandson), Bruce Willever, who is not an heir of John because his immediate ancestor, Gertrude, is still living. The gift is not to John's lineal descendants, but to his "lawful heirs," i.e., those of his lineal descendants who would constitute his heirs at common law. Gertrude, being the only child of John, and surviving him, would be *Page 552 
his sole heir at common law; but the testatrix expressly saysshe is not to take, notwithstanding she be an heir. However, her specific exclusion as a taker does not alter the fact that she is an heir and the sole heir — and hence cannot constitute her son an heir in her place. The will clearly contemplates that she is or may be an heir of John; but it does not in anywise purport to substitute her possible children as heirs of John in her stead.
The net result is that John has died without leaving any lineal heirs except Gertrude, and hence by the express and definite direction of the will, the fund is to go to Edgar absolutely.
(It may be noted that the same result would be reached if the word "lawful heirs" were to be construed as meaning "heirs under the Descent act" or as meaning "children." Gertrude was the only such heir surviving John, and the only child surviving John — and she being expressly excluded as a taker, Edgar would take under the alternative gift.)
Edgar predeceased John, but the legal result of the terms of the will and the facts, is that Edgar had a vested interest in the fund from and after the death of testatrix, subject to be divested by the death of John leaving him surviving one or more "lawful heirs" other than Gertrude. That contingency did not happen, and he was not divested. He died intestate and his interest passed to his next of kin — his wife and daughter. VanDyke's Admr. v. Vanderpool's Admr., 14 N.J. Eq. 198; SecurityTrust Co. v. Lovett, 78 N.J. Eq. 445; 79 Atl. Rep. 616; Potter
v. Nixon, 81 N.J. Eq. 338; 86 Atl. Rep. 444; Miers v. Persons,92 N.J. Eq. 17; 111 Atl. Rep. 638; Durand v. Ward, 105 N.J. Eq. 274; 147 Atl. Rep. 911.
It is concluded therefore that the order of the orphans court is erroneous in directing payment to Bruce Willever, and must be reversed with direction to enter order for distribution to the widow and daughter of Edgar White, as the latter's next of kin, in the proportions provided by the statute of distribution as it existed at Edgar's death; subject, however, to proof that the administrator or creditors of Edgar have no interest in or claim against the same. *Page 553