CELIA KRAMERMAN, PETITIONER-RESPONDENT, v. JACK SIMON AND ASSOCIATED INDEMNITY COMPANY OF NEW YORK, RESPONDENTS-PROSECUTORS.

Argued October 5, 1943—Decided February 23, 1944.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutors, *Edwin Joseph O'Brien* and *Thomas J. Brett.*

For the respondent, *David Roskein* (*John A. Laird,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is a workmen's compensation case. *R. S.* 34:15–7, *et seq.* The question is whether the wife, respondent here and petitioner below, carried her burden of establishing, by a "preponderance of probabilities," the basis upon which she asserted her right to compensation, namely, that her husband died as the result of an accident, which arose out of and in the course of his employment. *Cf. Gilbert v. Gilbert Machine Works, Inc.,* 122 *N. J. L.* 533; 6 *Atl. Rep.* (*2d*) 213; *Kuropata v. National Sugar Refining Co.,* 126 *N. J. L.* 44, 47; 17 *Atl. Rep.* (*2d*) 288.

In the Workmen's Compensation Bureau, the question was answered in the negative. The claim petition for compensation was dismissed, and judgment was entered in favor of prosecutors here.

In the Essex County Court of Common Pleas, the question was answered in the affirmative, the judgment of the Bureau was reversed and petitioner was awarded compensation.

Our appraisal of the proofs establishes the following facts:

Frank Kramerman, petitioner's husband, a carpenter, was 17 years old when he died about noon on July 8th, 1939. Save for a syncope (unexplained as to cause) which he suffered while doing some carpenter work some "four or five weeks" prior to his death and from which syncope he recovered in a "few minutes," in "a couple of minutes," and thereafter

continued with his work, his health prior to his death, according to his wife, was "all right."

Kramerman was employed by and worked for his brother-in-law, Jack Simon, one of the prosecutors here, and respondent below, as a carpenter.

On July 8th, 1939, along with other fellow workmen, Kramerman was engaged, as he had been for "a week and a half or so," in building an extension to the house located at 44 Orchard Street, Maplewood, New Jersey, and in building a "dormer" on the "top of the extension roof." The job was an outside one, a "light one" and it was not a rush job. Kramerman began his work at 8:00 A. M. It consisted, among other things, of sawing "shiplap" boards. These boards were passed to him by Simon who was on the ground. They were "seven-eighths of an inch thick," "ten inches wide," and "about twelve feet in length." Although the boards were very light in weight ("five or six pounds or maybe more"), Kramerman was not even obliged to lift them. For, they were "pushed" or "pulled" across the beams and onto the extension where he got and sawed them. A fellow employee did the nailing of the boards.

So Kramerman worked at the "usual" pace until "about ten minutes of twelve" when his employer, Simon, took him into a bedroom in the house where he gave him instructions concerning work to be done after lunch. About noon fellow employees found Kramerman dead in that room.

The Assistant Medical Examiner of the County of Essex examined the body. His powers and duties are clear. *R. S.* 40:21–24. Finding no evidence, as he put it, of "violence" or "criminal aspect," he performed no autopsy. He admittedly "assumed" by merely "looking" at the body that it was a "cardiac" case. That assumption was concededly based on his "guess," a guess which he estimated was accurate somewhere in the neighborhood of "90% to 95%" of the cases. At all events, he set down in his official certificate that the cause of Kramerman's death was "Sudden death while at work. Cardiac failure. Coronary thrombosis." So he certified notwithstanding the fact that inquiry of the family failed to disclose that Kramerman had received any "treat-

ment for any particular heart disease," or had "suffered" from any symptoms that might be guiding in making a determination as to the cause of his death. Because of his official status and action in the premises, the doctor declined to testify for either side as to whether there was any causal relation between Kramerman's work and his death. The doctor, however, explained that his answer, "No," to the question on the certificate as to whether "disease or injury was in anyway related to the occupation of deceased," was merely to indicate to the Bureau of Vital Statistics that the death "wasn't an occupational disease and nothing more and nothing less."

We hold that a correct result was reached in the Workmen's Compensation Bureau. The proofs fail to establish that Kramerman died as the result of an "accident" within the meaning of our Workmen's Compensation Act.

1. Clearly, this is not a case of death from heat prostration (*Cf. Douglass* v. *Riggs Disler Co.*, 120 *N. J. L.* 583; 1 *Atl. Rep.* (*2d*) 207; *affirmed*, 122 *N. J. L.* 379; 5 *Atl. Rep.* (*2d*) 873), nor of exertion resulting from the particular character of the work done in the open and exposed to the rays of the sun, causing a fatal coronary thrombosis (*Cf. Schneider* v. *F. & C. Haerter*, 119 *N. J. L.* 548; 197 *Atl. Rep.* 281), nor of exertion aggravating a pre-existing heart condition (*Bernstein Furniture Co.* v. *Kelly*, 114 *N. J. L.* 500; 177 *Atl. Rep.* 554; *affirmed*, 115 *N. J. L.* 500; 180 *Atl. Rep.* 832; *Hentz* v. *Janssen Dairy Corp.*, 122 *N. J. L.* 494; 6 *Atl. Rep.* (*2d*) 409), nor is it a case where the death is related to and affected by the employment, *i. e.*, but for the employment death would not have occurred. *Bollinger* v. *Wagaraw Building Supply Co.*, 122 *N. J. L.* 512, 520; 6 *Atl. Rep.* (*2d*) 396.

In the case at hand, the forenoon of July 8th, 1939, was a "sunny day," a "warm day." But the tests made by the two meteorologists as to the temperature, humidity and wind velocity, as of 11:30 A. M., utterly fail to indicate that it was, as in the case of *Ciocca* v. *National Sugar Refining Company of New Jersey*, 124 *N. J. L.* 329, 331; 12 *Atl. Rep.* (*2d*) 130, an "abnormally hot day," and where the workman became sick while working and where it was conceded that

the workman was overcome by and died from heat prostration. Additionally, the proof of a fellow workman, in the case at bar, is that the spot where the work was being done "was shaded [by] the trees" which were close to the building. Here there is neither proof of exertion, nor proof of causal relationship.

2. True, the doctor who testified for petitioner did say that there was a "causal relation" between Kramerman's work and his death. It is however equally true that the doctor admittedly so testified on the premise that Kramerman had died, as stated in the death certificate, of a coronary thrombosis. And the doctor further testified that in "no instance could he look at a dead person and tell you what the cause of death is."

Three doctors testified for prosecutors. Each testified that he could not tell by merely looking at a dead person that such person died from a heart condition. Each agreed that an autopsy only could supply the correct answer. Each agreed that there was no causal relation between Kramerman's work and his death. Their proof is persuasive. However good or fortunate the Assistant County Medical Examiner may have been in guessing the cause of death, ours is not the privilege to speculate with or guess away the rights of litigants. Our adjudication needs be and is based upon proper proof adduced in support of such asserted rights and the law applicable thereto.

It is clear that the Assistant County Medical Examiner had no knowledge of the facts to which he certified. Thus his certificate was not made "according to law" and, therefore, lacks the statutory efficacy claimed for it, namely, that it is *"prima facie* evidence of the facts therein stated." *Aitken* v. *John Hancock Mutual Life Insurance Co.,* 124 *N. J. L.* 58; 10 *Atl. Rep.* (2d) 745. With the fall of that certificate falls the testimony of petitioner's doctor that there was a causal relation between Kramerman's work and his death which testimony was, as we have already stated, convincingly refuted.

3. Kramerman was unquestionably where he had a right to be at the time of his death. This fact while indeed rele-

vant did not, in and by itself, under the circumstances of the instant case, relieve petitioner from her burden of establishing her asserted claim for compensation, "by a preponderance of probabilities according to the experience of mankind" (*Gilbert* v. *Gilbert Machine Works, Inc., supra,* at *p.* 538), that her husband had suffered an *accident* which arose out of and in the course of his employment. We find no such proof. *Cf. Nardone* v. *Public Service, &c., Co.,* 113 *N. J. L.* 540; 174 *Atl. Rep.* 745, cited with approval in *Armstrong* v. *Union County Trust Co.,* 14 *N. J. Mis. R.* 648; *affirmed,* 117 *N. J. L.* 423.

We have considered all other matters argued for petitioner and find them to be without merit.

The judgment of the Pleas is reversed, and the judgment in the Bureau is affirmed, but without costs.