25 N.J. Super. 280 (1953)
96 A.2d 283
WILMER WILSON AND REBA WILSON, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
MARY MILLER, ET VIR., ET ALS., FRANK BROTHERTON, GLADYS A. BROTHERTON, HIS WIFE, LILLIAN B. HELLIER, WALTER R. HELLIER, HER HUSBAND, ET ALS., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1952.
Decided April 7, 1953.
*282 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. C. Zachary Seltzer argued the cause for defendants-appellants (Mr. Sidney W. Bookbinder, attorney).
Mr. James M. Davis, Jr., argued the cause for plaintiffs-respondents.
The opinion of the court was delivered by GOLDMANN, J.A.D.
This is an appeal from a summary judgment in plaintiffs' favor in a partition action brought by them in the Superior Court, Chancery Division, as alleged owners of an undivided one-ninth interest in certain lands under the will of Elizabeth A. Hays.
Testatrix was in her lifetime seized of a 73-acre farm property on the Delaware River, situate partly in the Township of Florence and partly in the Township of Burlington, Burlington County, together with certain fishing rights in the river. Erected on said lands were a dwelling house occupied by certain of the defendants, a tenant house occupied by still other defendants, and a number of outbuildings. The Hays family burial ground is located on the property.
Elizabeth A. Hays died testate and without issue on February 28, 1910. By paragraph 7th of her will she provided:
"I give and devise unto Ella Horner, daughter of Anna Smith (formerly Horner), the farm whereon I now reside (Together with the fishing right purchased of the Commissioner to sell lands, etc. by deed of March 24, 1873, Book B 9 of Deeds, page 382) for and during the term of her natural life and after her death to her children, born or to be born, and to their heirs and assigns forever; but if the said Ella Horner should die without issue, then at her *283 death I give and devise the said lands and premises herein mentioned to such persons as at the time of her death would be my heirs at law on my father's side in equal portions."
Ella Horner, the life tenant, died intestate and without issue on July 10, 1947. Plaintiff Wilmer L. Wilson claims through his father George Wilson, who, he alleges, was an heir-at-law of the testatrix on her father's side. By their complaint Wilmer L. Wilson and his wife Reba sought partition of the lands and premises in question and a declaratory judgment adjudging, among other things, that defendants (appellants here) Frank Brotherton and Gladys, his wife, and Lillian B. Hellier and Walter, her husband, together with certain other defendants, had no right, title or interest in the property. They also demanded judgment directing an accounting from defendants Davis for the value of their use and occupation of part of the premises.
A proper understanding of the relation of the more important parties to the litigation requires examination of the Hays genealogy. The names hereinafter italicized are those of persons whom plaintiffs claim are the only ones entitled to an interest in the property.
Henry Hays, the common ancestor on testatrix' father's side, died in 1827. Of his seven children, only four need concern us:
1. Stacy Hays. His daughter Elizabeth A. is the testatrix.
2. Ann Hays Ranier. She had seven children by two marriages, among them Thomas Ranier, Elizabeth Ranier (later Wilson) and Samuel L. Ranier.
(a) Thomas Ranier died in 1925, leaving him surviving three children, only one of whom, Thomas Ranier, Jr., survived the life tenant Ella Horner, having died in August 1948. His widow and residuary devisee, Margaret P. Ranier, succeeded to any interest he might have in the lands in question.
(b) Elizabeth Ranier Wilson had four children, two of whom, George R. Wilson and Elizabeth (Ranier) Adams, survived the life tenant. George R. Wilson died in October 1947, and by his will devised his entire estate to his only *284 son Wilmer L. Wilson, the plaintiff, who in this action claims his father's interest. Elizabeth (Ranier) Adams was survived by three children: Helen (Adams) Johnson, Drucilla (Adams) Yohe, and E. Burd Adams, each of whom claims a third share of the mother's interest in the Hays property.
(c) Samuel L. Ranier died in 1927 leaving five children, only four of whom survived the life tenant Ella Horner: Lambert Ranier, Annie (Ranier) Schlindwein, Hays Ranier who subsequently died testate leaving his wife, Anna Ranier, as sole devisee; and Mary (Ranier) Miller.
3. Addis Hays had nine children, all of whom predeceased the life tenant. Of their children, only one, Allie (Hays) Cline, survived the life tenant.
4. Deborah (Hays) Scott had three children, all of whom predeceased the life tenant. There is only one grandchild, Leslie C. Scott.
Thus, at the time of the death of the life tenant, Ella Horner, on July 10, 1947 there were nine persons who were testatrix' heirs-at-law on her father's side, related to her in the fifth (and nearest) degrees of consanguinity as first cousins once removed: Thomas Ranier, Jr., George R. Wilson, Elizabeth (Ranier) Adams, Lambert Ranier, Annie (Ranier) Schlindwein, Hays Ranier, Mary (Ranier) Miller, Allie (Hays) Cline and Leslie C. Scott. Plaintiffs claim each was entitled to an undivided one-ninth interest in the lands and premises in issue. As indicated, Thomas Ranier, Jr.'s interest would now belong to his widow Margaret P. Ranier; George R. Wilson's interest is claimed by plaintiff Wilmer L. Wilson; Elizabeth (Ranier) Adams' interest would belong to her three children, Helen (Adams) Johnson, Drucilla (Adams) Yohe, and E. Burd Adams in equal shares (one twenty-seventh each); and Hays Ranier's interest would belong to his widow, Anna Ranier. Plaintiffs Wilmer L. Wilson and his wife have joined these several parties in interest as defendants, together with their respective spouses, if any.
Defendants Frank Brotherton and Lillian B. Hellier enter the genealogical picture in this wise: Among the seven *285 children of the common ancestor, Henry Hays, was Speacheas Hays. He had two sons, Henry and Mahlon. Nothing is known of Henry's descendants, if any, or if they survived the life tenant. Mahlon Hays died in 1899, leaving only one child who reached maturity, a daughter, Laura M. Brotherton. Frank and Lillian are her children. Laura M. Brotherton was also related to Elizabeth A. Hays in the fifth degree of consanguinity; her children, the defendants, are related in the sixth degree, being cousins twice removed. Laura M. Brotherton died in 1945 and therefore did not survive the life tenant. Plaintiffs claim that since she never became entitled to nor had vested in her an undivided interest in the lands and premises devised by Elizabeth A. Hays, defendants Frank Brotherton and Lillian B. Hellier did not, as did plaintiff Wilson, succeed to the share of their parent. They must stand in their own right, and accordingly it is alleged that they are not "heirs at law" under paragraph 7th of the will and have no interest in the subject matter of this action, nor do their spouses.
Defendants Brotherton and Hellier answered setting up five separate defenses: (1) a prior suit now pending, brought by them against substantially the same parties and concerning the same subject matter (partition); (2) the demand for judgment quieting title to the premises is not supported by allegations required by statute in an action to quiet title, because plaintiffs do not claim to be nor are they in actual possession of the premises; (3) plaintiffs fail to indicate what share, if any, as co-tenants or otherwise, they claim in the premises, nor what share the other parties claim to have as co-tenants, and further, the complaint is not verified; (4) determination of the respective rights of the plaintiffs as co-tenants depends on a construction by the court of the provisions of the Elizabeth A. Hays will; and (5) plaintiffs failed to join the Hays Riverview Cemetery Association, a corporation, as party defendant, and no final adjudication can be made without its presence as such party.
Plaintiffs thereupon moved for an order striking the answer and granting summary judgment against the *286 Brothertons and Helliers. The motion was supported by a long and detailed affidavit, setting out all the particulars of the family tree of Elizabeth A. Hays on her father's side, as well as the research that went into its construction. An answering affidavit listed several dozen alleged heirs-at-law of Elizabeth A. Hays, based upon information derived from one Bernice Carson Branch. After oral argument the court granted plaintiffs' motion.
Appellants contend that the granting of the motion was improper because (1) the pleadings and affidavits raised disputed issues of fact; (2) the court should have construed the will in order to determine in what sense testatrix used the words "heirs at law"; she did not intend them to have a technical meaning, and therefore evidence of her surrounding circumstances was necessary; and (3) the construction of a will or the question of testatrix' intent should not be decided on a motion for summary judgment.
It is necessary to dispose of certain preliminary questions raised in the court below, and incidentally in the brief on appeal, before passing on to a resolution of the more fundamental issues dispositive of the appeal.
Appellants urge, but not with too much conviction, that this is a quiet title action, and hence the complaint is deficient in the respects set forth in the second and third separate defenses to the action. The primary object of this suit is partition, not the quieting of title. A complaint in partition need not be verified. Rules 3:75-1 and 3:11.
Some question has been raised as to the parties named in the cause. It is elementary that to accomplish a legally effective partition it is necessary to join as parties, either as plaintiff or defendant, all persons who have an interest in the premises. Plaintiffs have done so; all persons who might possibly have or claim an interest  there are 48 named defendants and "the heirs, devisees and personal representatives," etc., of a number of them  have been joined as parties defendant, including Frank Brotherton and Lillian B. Hellier, who claim to be heirs-at-law of testatrix within the intent and meaning of paragraph 7th of the will, and their *287 spouses who claim derivative rights of curtesy and dower. Plaintiffs also sought declaratory relief in the Chancery Division; accordingly, appellants and the others were necessary parties defendant under N.J.S. 2A:16-56.
Appellants raised the point below of the pendency of a Chancery Division action brought by them shortly prior to the institution of this suit. (Docket C-1276-51). The defendants there were Elizabeth Hays Morrison, Bernice Carson Branch and John Branch, her husband; the unknown heirs, devisees and personal representatives of Stacy Hays, and his, their or any of their successors in right, title and interest, the Hays Riverview Cemetery Association, a corporation, Nancy Scott and Helen Scott. The argument as to the prior suit was not pressed before us. No motion to consolidate was ever made in the Chancery Division under Rule 3:42-1, and if it had, consolidation would have rested in discretion. All parties apparently necessary to a complete determination of the question of partition were before the court below.
The essential question here is whether, as the Chancery Division decided, the devise under paragraph 7th of the will is limited to first cousins once removed  those related to testatrix on her father's side in the fifth degree of consanguinity, or is it broad enough to include all her blood relatives, including the appealing defendants? Appellants insist that testatrix did not intend "heirs at law" to apply in its technical sense, i.e. as meaning those persons who would take under the Descent Act, N.J.S. 3A:4-5 (formerly R.S. 3:3-8). Cf. 5 New Jersey Practice (Clapp, Wills and Administration) (1950), § 117, p. 282; cf. Tuttle v. Woolworth, 62 N.J. Eq. 532, 538 (Ch. 1901). They contend here, as they did below, that the Chancery Division should have construed the will to determine in what sense "heirs at law" was used, taken testimony as to the circumstances surrounding the testatrix, and not decided the matter on a motion for summary judgment.
One of the most strongly based of all principles in probate law is that where the testamentary purpose is revealed *288 in clear and unequivocal terms, there is no room for judicial construction. McDonald v. Clermont, 107 N.J. Eq. 585 (E. & A. 1931); In re Fisler, 131 N.J. Eq. 310 (Prerog. 1942), affirmed 133 N.J. Eq. 421 (E. & A. 1943). The function of the court is to determine the intention of the testator from the language of the will, if possible. March v. Norristown Penn Trust Co., 123 N.J. Eq. 282 (E. & A. 1938); Leyendecker v. Leyendecker, 142 N.J. Eq. 449 (E. & A. 1948).
Testatrix provided that if Ella Horner, the life tenant, died without issue, "then at her death I give and devise the said lands and premises herein mentioned to such persons as at the time of her death would be my heirs at law on my father's side in equal portions." Nowhere in their brief do appellants point out where in the context of the entire will there is anything which unmistakably shows an intention on the part of the testatrix contrary to the primary or ordinary sense of the words she used. Cf. Leyendecker v. Leyendecker, above. Here, as below, they completely fail to show any ambiguity present in the will. They would have the will construed so as to include them, but establish no persuasive reason why this should be done.
Considering the whole of its context, the will clearly indicates that testatrix intended that the language under examination be interpreted in its primary sense. A reading of the testament shows that it was very carefully drawn. It employs many legal terms of art, all of them technically correct and meaningful, and its form exhibits skilled, professional draftsmanship. Elizabeth A. Hays made a will which is clear and intelligible throughout. It discloses a complete testamentary scheme, central to which was the preservation of the Hays family cemetery which forms part of the farm premises. The attention paid by testatrix to the preservation and improvement of this burial ground manifests her pride in the Hays side of her family  a consideration which is consistent with the closing provisions of paragraph 7th of the will.
*289 There is no suggestion that in using the words "heirs at law" testatrix meant any one other than those who would take under the Descent Act. The text of the act, as it stood when Elizabeth A. Hays died on February 28, 1910, may be found in L. 1905, c. 195, p. 358. It was twice amended before the life tenant, Ella Horner, died in 1947  see L. 1915, c. 31, p. 61 and L. 1917, c. 246, p. 844  but neither amendment made any substantial change in the law, which was later carried into the Revision of 1937 as R.S. 3:3-8, that is material to the present controversy. There has, therefore, been no change in the Descent Act which would enable appellants to point out that the statute as it stood when Ella Horner died meant something different from what the testatrix understood it to mean at the time of her death.
Where it is evident that a will has been drawn by one learned in the law, "the primary rule that the language is to be interpreted as meaning exactly what it says, and the secondary rule that the technical words used are to be understood according to their technical meanings, are particularly applicable." White v. Willever, 112 N.J. Eq. 546, 550 (Prerog. 1933), affirmed 118 N.J. Eq. 70 (E. & A. 1935). We hold that there was no ambiguity with respect to paragraph 7th of the will which called for the exercise of the judicial interpretative function in construing the will.
Appellants next argue that a summary judgment should not be granted where the adjudication of such a motion would constitute what is in effect a trial by affidavit on issues of fact. They maintain that where there are genuine disputed issues of fact, those issues must be resolved in a plenary hearing. Such is admittedly the law.
The complaint sets out the family relationships pertinent to the action in some 54 separately numbered paragraphs. Except for a single paragraph, which is admitted, the answer does not place these allegations in issue but merely calls upon plaintiffs to prove the truth thereof. The affidavits in support of the motion for summary judgment are exhaustive in their genealogical detail; they constitute the solid foundation upon which the complaint is predicated. Nowhere in *290 defendants' answering affidavits is there any dispute as to the stated family relationships. Instead, the main answering affidavit alleges that the list of heirs-at-law compiled by a Bernice Carson Branch  the list is set out in the affidavit  differs completely from the persons named by plaintiffs as heirs-at-law of Elizabeth A. Hays, and so a factual question is raised and the parties must be left to their proofs.
That the facts as to family relationship were not disputed, is made clear by a statement of defendants' counsel in the course of a colloquy with the court at the argument:
"* * * I am frank to say for two years, nearly two years, that I have been in this case that I was only able to find the information as Mr. Davis [plaintiffs' counsel] has already indicated, and, as I understand it from Mr. Davis, he has been in the matter a considerable time longer, and that the information that he first obtained is, of course, as he has indicated, the best information that we thus far obtained, * * *."
Further:
"THE COURT: I gather from what Mr. Davis said and from what you said, the pleadings demonstrate that Mr. Davis' clients are more closely related to the testatrix, a closer degree of consanguinity than your clients are. Now, if that is so, I conceive it would follow that your clients have no interest in the realty.
MR. BOOKBINDER: Your Honor please, as the matter now stands, that is correct  as it appears from the affidavit as submitted by Mr. Davis, but I submit to the court, 
THE COURT: It is not admitted but you are not disputing they are first cousins.
MR. BOOKBINDER: I am not in position to dispute it as of this moment. I cannot dispute it because I have not got better information.
THE COURT: I know but you are not disputing it.
MR. BOOKBINDER: So far as the degree of consanguinity, I must fall back on the first statement, but I say to the court, there must be, in this particular case, further opportunity for discovery to determine whether or not all the facts set up in this particular complaint are correct."
Counsel for defendants was clearly unable, by affidavit or otherwise, to dispute the allegations of the complaint and the affidavits supporting the motion. He finally asked for *291 further opportunity to investigate the correctness of plaintiffs' affidavits, insofar as determining what the interests of the respective parties might be. The court gave counsel two weeks more for that purpose, although the investigation had already been going on for some two years. Plaintiffs waited a full five weeks and, no further representations having been made to the court on defendants' behalf, presented the summary judgment which the court allowed.
The answering affidavits on the motion for summary judgment would indicate that there are heirs of Elizabeth A. Hays who have been omitted as parties defendant in this action. Reference to the list of alleged heirs obtained from Bernice Carson Branch shows nothing more than names and addresses of persons. There was no attempt to show the relationship of any one of them to the testatrix, either in the answer, the affidavits, or at the oral argument. Counsel for defendants referred to these persons as the "believed-to-be-heirs." Such speculation does not produce a genuine issue of fact.
As for the contention that plaintiffs failed to join the Hays Riverview Cemetery Association as a party defendant, the judge below properly observed that any such failure was the responsibility of plaintiffs' counsel, and if appellants in fact had no interest, they were in no position to complain about the claimed omission.
While a motion for summary judgment should be granted with caution, nevertheless where, as here, no genuine issue of fact is raised by the pleadings or affidavits and there is an absence of a showing by defendants that they have a ground of defense, plaintiffs are entitled to a summary judgment. Elliott-Lewis Corp. v. Graeff, 11 N.J. Super. 567, 569 (Law Div. 1951).
Judgment is affirmed.