ANNA DEVLIN, PLAINTIFF-APPELLANT, v. GEORGE SUR-
GENT AND JAMES A. YOUNG, DEFENDANTS-RESPOND-
ENTS, AND WALTER SCOTT, DEFENDANT.

Argued January 17, 1955—Reargued March 14, 1955—
Decided March 28, 1955.

Mr. *J. Mortimer Rubenstein* argued the cause for appellant (*Mr. Milton Schamach,* attorney).

Mr. *Nicholas Martini* argued the cause for respondent George Surgent.

The opinion of the court was delivered by

WACHENFELD, J. Eward L. Devlin, on December 17, 1951 and prior thereto, was employed by the Holy Sepulchre Cemetery in Totawa, New Jersey, as a laborer and truck driver. On the morning of that day, he reported for work in the normal course of his employment and began his duties of driving a truck with a co-employee, Mike Karchko, who was his helper. Sometime between 9:30 and 10 o'clock in the morning he parked the truck near a rest room on the cemetery property and informed Karchko that he intended to avail himself of its facilities and would return in about five minutes.

Devlin entered the ladies' rest room, which it had been the custom of employees to make use of, closed the door, but did not lock it. When he did not return for about 15 or 20 minutes, Karchko became apprehensive and went to look for him. He opened the door and found Devlin unconscious in a sitting position on the floor in the corner between the wash basin and the stalls and about six feet from a gas radiator which was located there.

There was a strong odor of gas. Karchko immediately notified the superintendent of the cemetery and together they brought Devlin from the rest room. He was taken to St. Joseph's Hospital in Paterson, where he died as a result of illuminating gas poisoning.

Thereafter, George Surgent, Chief Medical Examiner of the County of Passaic and a defendant in this cause, issued a death certificate listing the death as "suicide." He filed the certificate with the defendant James A. Young, as Registrar of Vital Statistics of the City of Paterson, and also with the defendant Walter Scott, as Registrar of Vital Statistics of the State of New Jersey.

Devlin left surviving him his widow, the plaintiff in this action. She filed a complaint alleging the death certificate, in so far as it lists the death as "suicide," was erroneous "as a result of mistake" and that by reason of the statutes of the State of New Jersey which make a death certificate *prima facie* evidence of the facts contained therein, see

*N. J. S.* 2*A*:82–12, she will be prejudiced by the erroneous death certificate and, unless it is corrected, will suffer irreparable harm. It is alleged that she is the beneficiary of certain policies of insurance held by the deceased under the terms of which double indemnity will be paid in the case of accidental death. It is further asserted, although not alleged in the complaint, that the erroneous death certificate constitutes an invasion of her right of privacy and will prejudice her in a workmen's compensation action which she intends to institute.

In her complaint she demanded judgment: (a) compelling the defendant George Surgent to file an amended and corrected death certificate showing the cause of death as "accident"; (b) compelling the defendant George Surgent to execute and file an amended death certificate deleting and expunging suicide as the cause of said death; and (c) enjoining the said James A. Young and the said Walter Scott against issuing copies of the erroneous death certificate. Subsequently, she modified her demands for relief and now asks only that the death certificate be amended by striking from it the statement that death was by suicide.

The defendants Surgent and Young filed answers. Surgent alleged, amongst other things, as a separate defense that the death certificate issued by him was in accordance with the duty imposed by law "upon the basis of facts indicating suicide and not an accident."

The defendant Young neither admitted nor denied any of the allegations contained in the complaint but stated that he had followed his duties in accordance with the law as Registrar of Vital Statistics of the City of Paterson. Scott filed no answer.

After a pretrial conference, Surgent served a notice of motion for summary judgment "on the ground that there exists no genuine issue of any material fact and that said defendant is entitled to a judgment as a matter of law." He filed an affidavit saying the certificate in question represented his "considered judgment and opinion as Chief Medical Examiner of the County of Passaic after careful consideration of all

the pertinent facts. There are no mistakes in said certificate which require correction." He did not, however, set forth what "all the pertinent facts" were, although he did refer to a toxicological report which had been submitted to him and which indicated only the medical fact that death had been caused by gas poisoning.

The trial court held that, although it had the power to grant relief against the consequences of a mistake, *Sears, Roebuck & Co. v. Camp,* 124 *N. J. Eq.* 403 (*E. & A.* 1938), no mistake had been committed in this death certificate since the listing of the death as "suicide" accurately recorded the conclusion of the medical examiner. The court concluded that absent a showing of fraud, it had no jurisdiction to substitute its judgment for that of the medical examiner and entered a judgment of dismissal on the motion for summary judgment. *Devlin v. Surgent,* 28 *N. J. Super.* 591 (*Ch. Div.* 1953).

On appeal, the Appellate Division affirmed, holding:

"In determining whether or not Dr. Surgent made a mistake, we will, of course, attach weight to his own sworn assertions that he made no mistake. Not only is there nothing to oppose these assertions, but there is not the slightest suggestion in the record before us indicating wherein he may have been wrong. Palpably the record presents no real issue upon the question whether he made a mistake." *Devlin v. Surgent,* 31 *N. J. Super.* 208 (*App. Div.* 1954).

The facts concerning the death of Edward Devlin recited above were not proven to the trial court, nor in the Appellate Division. They were stated in plaintiff's brief submitted to us. Apparently, the courts below had before them only the facts set forth in the complaint, which, as noted above, merely alleged that the death was caused by accident and not suicide.

On oral argument before this court, inquiries of the justices elicited the information that prior to the motion for summary judgment, depositions had been taken by both parties and a number of witnesses had been examined.

Neither the existence nor the contents of these depositions were called to the trial court's notice at the hearing for

summary judgment, nor were they before the Appellate Division on appeal. The reason for withholding them from the courts below is not satisfactorily explained, but apparently it was due, in part, to counsel's desire not to disclose the full strength of his position.

Our perusal of the depositions taken leads us to conclude that the trial judge would not have granted summary judgment had he been cognizant of their contents. The testimony recorded in the depositions raises an unresolved question of fact as to the cause of death requiring a disposition of the issues on their merits. While we need not detail the testimony, it is sufficient to note that there was some evidence of a leak in the gas pipe in the women's lavatory and that when Devlin went into the rest room, he left the window open, an act not normally consistent with an intent to commit suicide by gas poisoning.

Usually, we will not pass upon matters not presented or considered below, *Roberts Electric, Inc., v. Foundations & Excavations, Inc.,* 5 *N. J.* 426 (1950) ; *Anderson v. Modica,* 4 *N. J.* 383 (1950). However, the primary purpose of our judicial procedure and the governing rules is to facilitate the granting of justice and to bring about an impartial and expeditious determination of the essential merits of the issues between the parties. *Tumarkin v. Friedman,* 17 *N. J. Super.* 20 (*App. Div.* 1951) ; *Milk Drivers & Dairy Employees, etc., v. Shore Dairies, Inc.,* 8 *N. J.* 32 (1951).

The rules contemplate and it was intended that "just disposition of the merits" will be facilitated and "determinations on the basis of procedural niceties" would be avoided, *Handelman v. Handelman,* 17 *N. J.* 1 (1954), and to achieve that end, *R. R.* 1 :27A specifically provides that the rules may be relaxed or dispensed with in any instance where it shall be manifest that a strict adherence to them would work surprise or injustice.

A complete resume of the court's obligations and responsibilities on motions for summary judgment is contained in *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N. J.* 67 (1954). Mr. Justice Brennan, after setting

forth the background, origin and purpose of the proceeding, and the general rule governing its applicability, held in part:

"The role of the judge in that procedure is to determine whether there is a genuine issue as to a material fact, but not to decide the issue if he finds it to exist. * * *"

Referring to *R. R.* 4:58, he said:

"It is designed to provide a prompt, businesslike, inexpensive method of disposing of any cause which a discriminating search of the merits in the pleadings, depositions and admissions on file, together with the affidavits submitted on the motion clearly shows not to present any genuine issue of material fact requiring disposition at a trial."

A motion for summary judgment should be granted only with much caution. *Gretkowski v. Wojciechowski,* 26 *N. J. Super.* 245 (*App. Div.* 1953); *Earle v. Kuklo,* 26 *N. J. Super.* 471 (*App. Div.* 1953).

Summary judgments should not be granted where the adjudication of such a motion would constitute what is in effect a trial by affidavit on issues of fact. Where there is a genuine disputed issue of fact, the issues must be resolved in a plenary hearing. *Wilson v. Miller,* 25 *N. J. Super.* 280 (*App. Div.* 1953).

We think the case *sub judice* presents an instance in which a relaxation of the rules may well be suffered in accord with *R. R.* 1:27A, *supra.* Fundamental justice plus the recognized constitutional right of a day in court import the pursuit of such a course, thus warranting a meritorious determination of the factual issues when presented.

The cause will therefore be remanded for trial, but in fairness we must observe the result we are correcting occurred not through any lack of consideration or error committed by the respective courts below but by the failure elsewhere to adequately present the issues involved.

Additionally, following the original argument in this court, we directed the respective parties to submit additional briefs and to argue further whether or not the certificate as provided under *N. J. S.* 2A:82–12 is competent evidence as

to the manner of death in a civil action upon a life insurance policy seeking a judgment for double indemnity by reason of alleged death from accidental means.

It became evident on oral argument that the appellant, in an effort to save the cause of action she originally relied upon, accepted a position which in all probability would be contrary to her best interests at another time and place.

We have examined the authorities submitted by both sides, and while there is no decision directly dispositive of the issue in this jurisdiction, there is abundant authority elsewhere that the medical examiner's factual findings as to the cause of death as stated in the death certificate would not be admissible in the civil action.

However, an insurance company, as already inferred, lurks in the background and must still be heard from. It is the real party in interest in the contemplated litigation and is not presently represented before us. We think, therefore, we should not prematurely adjudicate a question which we may ultimately be called upon to decide until all the parties interested are in a position to be heard.

Reserving this issue, the judgment below is reversed for the reasons heretofore stated and the cause is remanded for disposition.

Costs to abide the result.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice OLIPHANT—1.