61 N.J. Super. 221 (1960)
160 A.2d 313
MARY ELLEN TALBOTT, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JAMES N. TALBOTT, DECEASED, PLAINTIFF,
v.
LEROY P. WOOSTER, CORONER, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 19, 1960.
*222 Messrs. DuBois, Maiale & DuBois, attorneys for plaintiff (Mr. Madison S. DuBois, appearing).
Mr. A. David Epstein, attorney for defendant.
SCHALICK, J.S.C.
This is an action brought by the plaintiff to have the court expunge from the death certificate of record a statement that death was a suicide. The plaintiff is the widow and also executrix of decedent's estate.
The plaintiff contends that the coroner does not have the power to make a finding of suicide without holding an *223 inquest and summoning a jury under R.S. 40:40-1 et seq., and in counties where there is a county physician, as well as a coroner, the rights of the county physician supersede those of the coroner, as defined in R.S. 40:21-23 et seq., and further, the finding of suicide was not supported by the evidence.
Camden County is a county of the second class and has a county physician, and defendant is a duly elected coroner, but the office of county chief medical examiner has not been created under N.J.S.A. 40:21-30.1 et seq.
On August 16, 1959, at 5 A.M., the body of James N. Talbott was found in the garage attached to his home, with the garage doors closed. The coroner and police department were called, and the coroner instituted an investigation and later called upon the county physician who performed an autopsy. The investigation conducted by the coroner was thorough and, relying on the past conduct of the decedent, the attendant circumstances of his death, as well as the opinion of the county physician, the coroner found that it was an intentional self-destruction, or suicide, caused by carbon monoxide poisoning.
Evidence was produced before the court on behalf of the plaintiff indicating that death could have resulted within a few minutes if the motor of the automobile had been started in a closed garage, showing the temperature at that time, the percentage of emission of carbon monoxide from this motor, the size of the enclosure and other related facts, which proofs the plaintiff claims could reasonably lead to the conclusion of death by accident.
The depositions of the defendant and county physician were admitted in evidence as the defense. The coroner reasserted his opinion based on the location of the body, the condition of the motor at the time of the coroner's arrival, a previous threat by Talbott to commit suicide, resulting in a complaint by his wife and his committal to an institution, the conclusion of the county physician that death was caused by carbon monoxide, and other supporting factors.
*224 N.J.S.A. 26:6-7 provides that a death certificate shall be filled out on forms provided by the State Department of Health, and on this form, under "supplemental information if death was due to external causes," there is included in the printed form "accident, suicide, or homicide." The coroner inserted "suicide" as the cause of death and signed the filed certificate.
Under the common law "The office and power of a coroner are also, like those of the sheriff, either judicial or ministerial; but principally judicial." 1 Blackstone Commentaries 348. The coroner's duties extended to the holding of an inquest whenever there was a reasonable suspicion attending the circumstances of death.
Our early statutes substantially reflect the common law in defining the duties of a coroner, requiring him to make proper inquiry respecting the cause and manner of death. If from such inquiry, the said coroner shall be satisfied that no person has been guilty of causing or procuring the death, and that there are no suspicious circumstances, he shall, without further proceedings therein, deliver the body to the friends thereof for interment. N.J.S.A. 40:40-6. The provisions of N.J.S.A. 40:40-8 deal with the requirement of an inquest with a jury to be presided over by the coroner, "If after view and inquiry the coroner shall have reason to suspect that the deceased came to his death by murder, manslaughter, or the contrivance, aiding, procuring or other misconduct of any person, and in counties having a county physician, upon the written request of such county physician * * *." These provisions are included in L. 1953, c. 37. Retained in the acts in reference to coroners, is the provision in R.S. 40:40-4 (Rev. 1877, p. 170, par. 3), "Except as otherwise provided by law as to counties having a county physician or chief medical examiner, every coroner may, upon viewing the body, hold inquests in all cases of deaths in prison, and of all sudden, violent or casual deaths within the county * * * to determine the manner of such deaths." (Italics mine)
*225 N.J.S.A. 40:40-28.5 and 28.6 (L. 1947, c. 404) require the coroner to "fully investigate the essential facts concerning the death," within any county having no medical examiner or county physician.
Other statutory guides in this case are found in N.J.S.A. 40:21-26.6 to 40:21-28.
"All the duties imposed upon, and all powers vested in, coroners in connection with the death of any unknown or unclaimed person who shall have died in any county in which there shall be a county physician, or in connection with the death of any person in such county by violence, or by casualty or suicide, or suddenly when in apparent health, or when unattended by a physician, * * * shall be imposed upon and vested in the county physician, except that the county physician shall not be authorized or required to summon a jury of inquisition." N.J.S.A. 40:21-26.8 (L. 1947, c. 403).
"If a county physician shall have been elected and qualified, and is fulfilling his office, he shall have exclusive right and power to make all views and inquiries heretofore made by coroners and justices of the peace. No precept for the summoning of a jury of inquest shall be issued by any coroner of any county in such cases except by the written request of the county physician, and the written request of the county physician shall be annexed to the inquest made and returned by the coroner." N.J.S.A. 40:21-25 (L. 1953, c. 37).
In ruling on the right of a physician, other than a county physician, to testify, in State v. Rios, 17 N.J. 572, 595 (1955), the court analyzed the cited statutes, N.J.S.A. 40:21-24, 25, 26.6 and 26.7:
"The statutes referred to above simply deprive coroners and justices of the peace from the rights and powers formerly vested in them to make views, inquiries and investigations into the cause of death in certain enumerated cases, and install them exclusively in the county physician. Thus, it was intended to do no more than settle the obligations and duties as between these classes of officials."
Where there is no attending physician, R.S. 26:6-8 provides:
"In the execution of a death certificate, * * * The death and last sickness particulars shall be supplied by the * * * county physician, or coroner."
*226 A review of the controlling statutes rules out the coroner's right in this case to ascertain the cause of death, for the county physician is the proper person to make the determination. Furthermore, the statute which refers to the execution of the death certificate by the county physician or coroner gives no added rights to the coroner beyond those which he has by right of his office. The right of conducting an inquest is reserved to the coroner, and then only upon the written request of the county physician in cases within the statutory definition and, otherwise, in such cases, all duties and powers are vested in the county physician.
The death certificate was not made in accordance with the law. Aitken v. John Hancock Mutual Life Ins. Co., 124 N.J.L. 58 (E. & A. 1940); Kramerman v. Simon, 131 N.J.L. 250 (Sup. Ct. 1944); Macko v. Herbert Hinchman & Son, 24 N.J. Super. 304 (App. Div. 1953). The right of the equity court to correct a mistake or fraud in an entry on a death certificate and expunge from that certificate an improper finding is supported by our courts in Devlin v. Surgent, 28 N.J. Super. 591 (Ch. Div. 1953), 31 N.J. Super. 208 (App. Div. 1954), 18 N.J. 148 (1955). A fortiori, when the "death particulars" are supplied by a person other than the one authorized by law, the court of equity will assume jurisdiction and delete the unauthorized statement.
The Legislature has narrowed the rights of a coroner in counties with a county physician to the point where the county physician assumes most of the duties previously performed by the coroner, limiting to the coroner the right of holding an inquest in certain cases.
"Where the legislative purpose is expressed in unmistakable language, it must be enforced by the courts as it is written, without regard to its wisdom or utility." Baader v. Mascellino, 116 N.J. Eq. 126, 130 (E. & A. 1934).
See also, Adams v. Atlantic County, 137 N.J.L. 648 (E. & A. 1948).
*227 In construing the cited statutes, the court need only give effect to the legislative enactments restricting the right to ascertain the cause of death to the county physician to the exclusion of the coroner. There is no reason for the court to assay the evidence as to the cause of death.
Judgment will be entered for the plaintiff accordingly.